**LA PETITE AUBERGE, INC.**

v.

**RHODE ISLAND COMMISSION FOR HUMAN RIGHTS.**

**No. 77–447–Appeal.**

Supreme Court of Rhode Island.

Aug. 27, 1980.

Moore, Virgadamo & Lynch, Ltd., Joseph R. Palumbo, Jr., Newport, for plaintiff.

Dennis J. Roberts II, Atty. Gen., Richard B. Woolley, Sp. Asst. Atty. Gen., for defendant.

OPINION

WEISBERGER, Justice.

These appeals were taken from an order of the Superior Court which directed that certain discovery procedures take place prior to an administrative hearing before the Rhode Island Commission for Human Rights (the commission). Brought into issue in this case is the responsibility of the commission to make its investigative and information–gathering powers available to parties to a contested proceeding before it.

The case grew out of a dispute between Ann Marie Wall (Wall) and La Petite Auberge, Inc. (L'Auberge), her former employer. Wall was a luncheon waitress at L'Auberge, a Newport restaurant. On June 8, 1976, she filed a charge against L'Auberge with the commission, in which charge she alleged that L'Auberge had discriminated against her on the basis of her sex when it declined to allow her to fill an evening waiter vacancy for which she was qualified. The charge was investigated by the commission staff and led to a preliminary ruling by an investigating commissioner that there was reasonable cause to believe that a violation of G.L.1956 (1979 Reenactment) § 28–5–7 had occurred. Conciliation negotiations, mandated under § 28–5–17, were unsuccessful and a commission complaint against L'Auberge was duly filed. A hearing was scheduled for May 4, 1977.

On March 15, 1977, L'Auberge requested that the commission issue a subpoena duces tecum to Wall to require her to produce for L'Auberge's inspection her compensation records from January 1, 1976 (including records of the compensation she received while employed at L'Auberge and at the Viking Hotel), as well as a copy of her 1976 federal income tax return. L'Auberge also requested that a subpoena duces tecum issue directing the Viking Hotel to produce records of Wall's wages and tips while she was employed at the Viking. The commission issued the subpoena directed to Wall on

April 18, 1977, and she apparently complied with its terms, although L'Auberge was apparently unaware of her compliance and did not avail itself of the commission's receipt of the subject records.[1] The commission did not subpoena the Viking Hotel's records. On its own account the commission did subpoena from Roger G. Putier, president of L'Auberge, all records of L'Auberge's gross–sales receipts for food and beverages, waiter and waitress compensation records, and applications for employment from the date L'Auberge opened under the present ownership.

In a letter dated April 22, 1977, L'Auberge's attorney requested permission of the commission to depose Wall in advance of the hearing scheduled for May 4. The request was denied and counsel for L'Auberge was accordingly notified by letter dated April 26, 1977. L'Auberge then commenced the present action against the commission in Superior Court for the County of Newport, seeking injunctive relief. In its complaint L'Auberge charged. (1) that the commission was without the authority or power to subpoena Mr. Putier or examine L'Auberge's records between the conclusion of the commission's preliminary investigation and the beginning of the adjudicative hearing and (2) that the commission should have acceded to L'Auberge's requests that

Wall be deposed and that subpoenas duces tecum should have been issued to Wall and the Viking Hotel requiring them to produce wage records.[2] The hearing on the discrimination charge was postponed until the termination of this litigation.

Both L'Auberge and the commission moved for summary judgment. Although he denied the motions, the trial justice entered an order which upheld the Putier subpoena, directed the commission to subpoena records from Wall and the Viking Hotel as L'Auberge had requested, and allowed L'Auberge the right to take Wall's deposition prior to the hearing. The trial justice reaffirmed this order in response to the commission's motion to alter or amend the judgment, and both parties have filed appeals.

I

The commission asserts that the Superior Court complaint should have been dismissed for lack of subject–matter jurisdiction.[3] The record discloses that it was not until the commission's motion to alter or amend the judgment, made shortly after the trial justice had entered its first order, that the commission first raised its jurisdictional contention.[4] In oral argument on the mo-

1. There is some confusion in the record and the briefs regarding the Wall subpoena. Three days after it issued, counsel for L'Auberge, obviously unaware of his partial success, repeated its requests for subpoenas of Wall and the Viking. Later, in its Superior Court complaint, L'Auberge alleged that subpoenas to Wall and the Viking had not been issued, and it prayed that the court order their issuance. Commission Executive Director Nancy Newbury stated in an affidavit that after the issuance of the Wall subpoena on April 18, 1977, Wall produced the required documents and they are available for L'Auberge's inspection and reproduction during normal business hours. Despite these representations, the trial justice ordered the commission to issue a subpoena to Wall.

2. L'Auberge also charged that the Putier subpoena was overbroad. This contention, however, has been abandoned on appeal.

3. In its brief the commission, after several paragraphs of arguing that the lower court was without jurisdiction, states in a footnote that

"[a]s the question of the rights of parties to discovery in proceedings before the commission has recurred and is likely to recur the commission requests that this Court should now reach the merits of this case." To whatever respect the commission's argument relates to subject-matter jurisdiction, however, we may not overlook it at the commission's request–lack of subject–matter jurisdiction may not be waived and may never be cured by agreement of the parties. *Castellucci v. Castellucci*, 116 R.I. 101, 103, 352 A.2d 640, 642 (1976); *McGann v. Board of Elections*, 85 R.I. 223, 236, 129 A.2d 341, 348 (1957). We therefore ignore the request made in the quoted footnote of the commission's brief.

4. The commission in its motion to alter or amend stated that "[a]s such [discovery] matters [that are the subject of the civil action] are clearly within the discretion of the Commission until such time as the Commission has made a final order * * * this court has jurisdiction [sic] to consider plaintiff's complaint for relief." We shall supply what appears to be an inadvertently omitted negative.

tion to alter or amend, counsel for the commission elaborated its position that the Fair Employment Practices Act provisions that allow an aggrieved party to obtain judicial review of a final order of the commission, G.L.1956 (1979 Reenactment) §§ 28–5–28 to 28–5–36, indicate that there is no power in the Superior Court to interfere with commission proceedings before a final order has been handed down.

■■■ Assuming arguendo that the commission's interpretation of the Fair Employment Practices Act has merit, the argument relates not to the presence or absence of subject–matter jurisdiction of the Superior Court but to the correctness of the court's decision to intervene. The tendency of counsel before this court to couch assertions of mere error in terms of lack of subject–matter jurisdiction has carried on with notable perseverance in spite of our repeated attempts to elucidate the distinction between the two arguments. *See, e. g., Borozny v. Paine*, R.I., 411 A.2d 304 (1980); *Hartt v. Hartt*, R.I., 397 A.2d 518 (1979). In this connection we repeat the principle that the Superior Court is a court of general equitable jurisdiction, G.L.1956 (1969 Reenactment) § 8–2–13; *Borozny v. Paine*, R.I., 411 A.2d at 307; although its jurisdiction is not limitless, the Superior Court possesses, as a matter of fundamental judicial power, the jurisdiction to hear and confront the merits of any case wherein the power of determination has not been specifically conferred upon another tribunal. Judicial intervention under the present facts may be argued to have been improper, but considered as a matter of subject–matter jurisdiction, the jurisdiction of a court of

equity to aid a respondent who claims he is being irreparably harmed by the conduct of administrative proceedings may not be disputed. *Jordan v. United Insurance Co. of America*, 289 F.2d 778, 782–83 (D.C.Cir. 1961); *Lahey Clinic Foundation Inc. v. Health Facilities Appeals Board*, —— Mass. ——, ——, 380 N.E.2d 675, 682 (1978); Jaffe, *Judicial Control of Administrative Action* 161, 193–94 (abr. ed. 1965).[5] This being the case, the commission's present contention reduces itself to a claim of trial–court error–"to the appropriate exercise of power as opposed to the absence of power, "*Hartt v. Hartt*, R.I., 397 A.2d at 523. Properly considered, the commission's contention is that relief should not be granted on L'Auberge's complaint at the present stage of the administrative proceedings–a contention appropriately raised under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

■■■ The commission did not confront the trial court with this contention until after a final order had been entered. Rule 12(h) provides in part that

"[a] party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except * * * that the defense of failure to state a claim upon which relief can be granted * * * may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at trial on the merits."

The clear intendment of our rule, which is modeled after Rule 12(h) of the Federal Rules of Civil Procedure, is that a failure to

---

5. We note that the Administrative Procedures Act grants specific authority for judicial review of interlocutory as well as final orders: "Any preliminary, procedural, or intermediate agency act or ruling is immediately reviewable in any case in which review of the final agency decision would not provide an adequate remedy." General Laws 1956 (1977 Reenactment) § 42–35–15(a). In this instance, however, it is questionable whether the complaint for relief in the Superior Court was technically within the scope of this section as a request for "review" as opposed to being a claim for independent relief.

For reasons here explained, we need not and do not decide whether the Superior Court ought to decline to scrutinize an administrative body's handling of requests for subpoenas until the conclusion of proceedings there. Obviously, the Superior Court should sparingly exercise the power to review interlocutory rulings of administrative agencies in order to avoid inundation by preliminary issues that may ultimately be resolved or become moot in the course of litigation at the administrative level.

state a claim may not be raised by the defendant after a disposition on the merits. *See Snead v. Department of Social Services,* 409 F.Supp. 995, 1000 (S.D.N.Y.1975) (three–judge court). By failing to raise the argument here in issue before the trial justice had rendered his disposition on the merits, the commission waived its right to have the argument addressed. Super.R. Civ.P. 12(h); *see Brule v. Southworth,* 611 F.2d 406, 409 (1st Cir. 1979); *Black, Sivalls & Bryson, Inc. v. Shondell,* 174 F.2d 587, 590–91 (8th Cir. 1949). Therefore we will not consider it. We will not permit a party to blur the distinction between failure to state a claim and lack of subject–matter jurisdiction (the latter of which may not be waived and may be raised at any time) in order to make timely a motion that is not timely. *See Brule v. Southworth,* 611 F.2d at 409; *Snead v. Department of Social Services,* 409 F.Supp. at 1000. Thus we shall proceed to a review of the merits of the Superior Court's grant of relief.

## II

The central question presented by this case is whether the trial justice erred in ordering the commission to afford L'Auberge a degree of prehearing discovery through the issuance of subpoenas duces tecum directed at the Viking Hotel and subpoenas duces tecum and ad testificandum directed at Wall. Concededly, there is no explicit provision in either the Fair Employment Practices Act, chapter 5 of title 28, or the Administrative Procedures Act, chapter 35 of title 42, of any right of a party to prehearing discovery. Legislative authorization may be found, however, for whatever system of discovery may be necessary to ensure procedural fairness, for among the commission's enumerated powers and duties are the powers and duties

"[i]n connection with any investigation or hearing held pursuant to the provisions of this chapter, to * * * subpoena witnesses, compel their attendance, administer oaths, take the testimony of any person under oath, and, in connection therewith, to require the production for examination of any books and papers relating

to any matter under investigation or in question before the commission." Section 28–5–13(G).

Nothing in this statute limits its application to the time of the hearing itself. Hence any contention that the Legislature has failed to confer upon the commission subpoena power capable of being used in advance of the hearing may not be maintained. Our inquiry therefore becomes this: to what extent does basic fairness require the commission to make its subpoena powers available to respondents between the times of the issuance of an unfair–practice complaint and the hearing?

Before this question is discussed, it is well to outline the administrative procedures in issue. Insofar as the record before us discloses, the following enforcement pattern is typical at the commission. The staff receives and preliminarily investigates unlawful–employment–practice charges brought by aggrieved individuals or civil–liberties organizations. The commission staff is also entitled to begin investigations on its own initiative. If the investigation by the staff leads to a preliminary finding by a single commissioner (the "preliminary investigating commissioner") that unlawful practices probably have been or are being engaged in, the commission staff attempts to eliminate them by informal methods of conference, conciliation, and persuasion. If these attempts to deal with the alleged violations are unsuccessful, the commission will issue and serve upon the respondent a complaint and a notice of hearing. The complainant is a party to the proceeding and may be present at the hearing, but the complaint is technically brought by the executive director of the commission or by a single commissioner. At the hearing, at which one or more commissioners or one or more hearing examiners (but not the commissioner who earlier made the probable–cause determination) preside, the respondent may appear with counsel, present evidence, and examine and cross–examine witnesses. He may obtain compulsory process through the use of § 28–5–13(G) and commission regulations. Formal rules of evidence do not ap-

ply at the hearing, although they may be given consideration. Upon a decision favorable to the respondent, the complaint is dismissed. A decision adverse to the respondent culminates in the issuance of a cease–and–desist order, which may require the respondent to take affirmative corrective measures. Any aggrieved party may obtain judicial review, and the commission may obtain court enforcement of its order, in the Superior Court. Review is normally confined to the record of the administrative proceedings, but a party may apply to the court for leave to adduce additional material evidence before the commission if there were reasonable grounds for his failing to adduce the evidence at the first administrative hearing. *See generally* chapter 5 of title 28, G.L.1956 (1979 Reenactment); Commission Rules and Regulations (1979).

The importance of the administrative–hearing stage of this process to a respondent may not be overemphasized. If procedural infirmities prejudicial to him inhere in that stage of the proceedings, it is no answer to say that they may be cured later through an application to the Superior Court for leave to conduct further hearings. Obvious advantages relating to economy and convenience are promoted through resolution of issues at a single hearing. Moreover, a respondent facing charges of employment discrimination is entitled to present his best case at earlier stages of the hearing process, if he sees fit. The advantages to be gained from thorough investigation and knowledge of the issues before the beginning of the hearing may also be indispensable during cross–examination of witnesses presented by counsel in furtherance of the complaint.

 In the present case no hearing has as yet been conducted. We have no way of judging to a certainty what prejudice would be visited on the respondent, L'Auberge, by virtue of the denial of the entitlement to conduct prehearing discovery. Nonetheless, certain conclusions commend themselves to reason. One conclusion is that the basis of the prosecuting side's evidentiary presentation–aside from

Wall's personal–experience testimony–will be the investigative file assembled by the commission staff, whether the "prosecution" is directed by Wall, an attorney retained by her, or a commission staff attorney. If this is so, the mechanisms for compelling testimony and the production of documents enjoyed by the commission staff during the investigative phase of this encounter will result in a procedural imbalance unfavorable to L'Auberge. The commission maintains that the power to adduce testimony and documents does not accrue to L'Auberge until the hearing begins. At that point it may be too late to secure the materials necessary for a full preparation of a defense. It is not unreasonable to infer that under such circumstances the hearing will proceed under conditions in which one side has had an extensive period (the investigation) in which to carry on what amounts to full discovery, while the other side has had none. But if fairness is to characterize the hearing, discovery may not be unilateral. 1 Cooper, *State Administrative Law* 313 (1965); Berger, *Discovery in Administrative Proceedings: Why Agencies Should Catch up with the Courts,* 46 A.B.A.J. 74, 75 (1960); Tomlinson, *Discovery in Agency Adjudication,* 1971 Duke L.J. 89, 124–25.

In *Shively v. Stewart,* 65 Cal.2d 475, 421 P.2d 65, 55 Cal.Rptr. 217 (1966), the Supreme Court of California considered a case similar to this one and required a state agency to issue prehearing subpoenas to compel the production of documents. *Shively* involved an accusatory license–revocation proceeding before the California Board of Medical Examiners. After accusations had been brought against the respondents, they asked the hearing officer to afford them access to agency process for the purpose of engaging in discovery before the hearing. The Supreme Court of California, speaking through Chief Justice Traynor, ruled that these requests should not have been summarily refused. Although the state statutes in question did not mention prehearing discovery, the court held that the procedures mentioned in the statutes may be augmented by the common law when fairness requires additional safe-

guards–as when the agency has had "the resources of the state at its command to enable it to secure complete information and to prepare its case before filing an accusation" and when "the agency is the accuser, a party to the proceeding, and ultimately makes a decision on the record." *Id.* at 479, 480, 421 P.2d at 68, 55 Cal.Rptr. at 220.

We agree with the fairness principles enunciated in *Shively*[6] and endorsed by the commentators cited above. Mutual knowledge of the matters in issue and mutual opportunity to plan for a contested hearing are the bases of proper litigation. *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451, 460 (1947). Not unlike a court trial, an administrative hearing involving serious charges of violation of law should be "less a game of blindman's buff [than] a fair contest with the basic issues and facts disclosed to the fullest practicable extent," *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077, 1082 (1958).[7]

We are not persuaded to the contrary by the assertion that the Legislature designed commission hearings to be less formal than courtroom trials and that therefore discovery rights should be curtailed. First, we do not construe the governing statute here to manifest a legislative intent to sacrifice a respondent's entitlement to fairness for the sake of "informality." Thus we need not address constitutional limitations upon legislative power in this area. Second, opportunities to conduct discovery would appear consistent with goals of a smoothly conducted and efficient hearing. If a party must conduct his investiga-

tion of the facts by subpoenaing witnesses and documents *at the hearing*–the substitute for prehearing discovery which the commission recommends–then the hearing will tend towards both protracted and technical disputes, which could have been avoided by the resolution of production demands at an earlier stage.

More serious objections to prehearing discovery in administrative proceedings are the likelihood of delay and harassment. When a possible victim of discrimination brings charges against a business, the respondent may be tempted to use discovery devices to serve purposes other than those for which they are intended. Nothing brought to our attention in the present case gives us reason to suspect L'Auberge of such improper motivations, however; nor do we feel it inevitable that the typical party to commission proceedings will be so motivated. If the commission believes otherwise, it is free to adopt reasonable regulations to be applied in the future in connection with all contested cases, which regulations might lessen the threat of abuse. For example, the commission might adopt rules which require a party who requests a discovery subpoena to show the relevance of the information sought and the reasonableness of the scope of the subpoena and which permit a discovery subpoena to be quashed after its issuance if the matters sought to be adduced are not relevant or the subpoena not reasonable in scope.

As we have concluded that the commission must make its compulsory–process powers available to L'Auberge for the purpose of some measure of prehearing discovery, we now turn to the particular discovery requests made in the present case.

---

6. Since G.L.1956 (1979 Reenactment) § 28–5–13(G) is broad enough to empower the commission to issue discovery subpoenas at the request of a party to a contested case, we do not need to hold, as the *Shively* court did, that the common law supplies its own authority, in the absence of statute, to an administrative agency to issue subpoenas for discovery.

7. Apart from making the balance between the opposing sides more nearly equal, the availability of some form of discovery to respondents can be expected to further several neutral ob-

jectives, including elimination of surplus points of contention and narrowing of issues, elimination of surprise, discouragement of perjury, reduction of investigative costs and duplication of effort, and encouragement of settlement through the supplying of more information on the strength of each side's case and on the likelihood of either to prevail. *See* 4 Mezines, Stein & Gruff, *Administrative Law* § 23.01 at 23–2 (1980); *Developments in the Law–Discovery*, 74 Harv.L.Rev. 940, 944–46 (1961).

As for the subpoena duces tecum that is sought in order to elicit from Wall her compensation and tax records, the record indicates that this subpoena was in fact issued on April 18, 1977, pursuant to L'Auberge's request. The executive director of the commission has represented in her affidavit that Wall complied with the terms of the subpoena on or about April 29, 1977, and that the subpoenaed records are available for L'Auberge's inspection and reproduction. If this is so, then the propriety of the Superior Court's order that required this subpoena to be issued is moot. Should it be ultimately determined that compliance has been inadequate or incomplete, then in accordance with the foregoing principles the order of the Superior Court should be obeyed.

In connection with the subpoena duces tecum for compensation records in the possession of the Viking Hotel, the commission tenders the argument that it acted within its discretion in refusing to subpoena those records, inasmuch as they are "irrelevant" in view of the anticipatedly successful subpoenaing of identical records from Wall. But as L'Auberge persuasively points out, only production of the Viking's records will show whether they are identical or not. One does not automatically know, for example, whether there are not more records that Wall has failed to produce—as the trial justice himself noted. A predicted duplicativeness of records without other reasons may not justify nonissuance of a subpoena that has been requested for a lawful purpose and is directed at information relevant to the proceedings at hand. The trial justice's ruling on this request was correct.

The request to depose Wall in advance of the hearing should also have been granted by the commission, as the trial justice determined. L'Auberge reasonably predicted that a significant portion of the case against it at the hearing would consist of the sworn testimony of Wall. Knowledge of the tenor of that testimony, beyond the somewhat limited allegations made in the complaint, would be highly constructive to L'Auberge's preparation for the hearing. If, as the trial justice implicitly found, the taking of Wall's deposition was an efficient method under the circumstances of the case for L'Auberge to discover her position, then deposing her is appropriate and the commission should have ordered it, giving appropriate notice to all parties. The statutory authorization for the commission to issue subpoenas and subpoena duces tecum is broad enough to authorize the taking of depositions. *See Shively v. Stewart,* 65 Cal.2d at 482, 421 P.2d at 69, 55 Cal.Rptr. at 221. *Cf., e. g.,* 16 C.F.R. § 3.34(a) (1980) (wherein the Federal Trade Commission, by regulation, has used its statutory subpoena power, 15 U.S.C. § 49 (1976), to authorize the subpoena of persons for the taking of their depositions).

III

L'Auberge argues that the commission acted improperly when it subpoenaed L'Auberge's president after it had filed a complaint against L'Auberge. This argument may be summarized as follows. Once the complaint had been issued, the status of the commission with respect to L'Auberge changed from that of accuser into that of adjudicator. Thereafter the commission owed L'Auberge whatever degree of impartiality accompanies the exercise of judicial function. The issuance of a subpoena after adversary proceedings had effectively commenced was not an appropriate judicial act; for this reason, L'Auberge maintains, the subpoena should not be permitted.

Obviously, the Due Process Clause of the Fourteenth Amendment guarantees that a person shall not be tried before an administrative tribunal that is biased or otherwise indisposed from rendering a fair and impartial decision. *Marshall v. Jerrico, Inc.,* —— U.S. ——, ——, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182, 188 (1980); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, ·71 L.Ed. 749 (1927). Fundamental fairness includes the right not to be judged by one's party opponent. *Wong Yang Sung v. McGrath,* 339 U.S. 33, 50–51, 70 S.Ct. 445, 454, 94 L.Ed. 616, 628–29 (1950); *Figueroa Ruiz v.*

*Delgado*, 359 F.2d 718 (1st Cir. 1966); Coke, *The First Part of the Institutes of the Laws of England* ("Coke on Littleton") *141a. The question here presented, as we see it, is whether the commission's demand for business records demonstrates such an adversarial posture on its part that its role as adjudicator would be irreparably compromised unless it is prevented from enforcing its demand.[8]

■ Although the appropriate resolution of investigatory, inquisitorial, and adjudicative roles in a single administrative body has been one of the most problematic features of state and federal administrative law, *Withrow v. Larkin*, 421 U.S. 35, 51, 95 S.Ct. 1456, 1466–67, 43 L.Ed.2d 712, 726 (1975), it has come to be accepted that the mere existence of a combination of these functions does not establish the unconstitutionality of an agency's structure or operations. *See id.* at 52, 95 S.Ct. at 1467, 43 L.Ed.2d at 726–27; *Richardson v. Perales*, 402 U.S. 389, 410, 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842, 857 (1971); *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 701, 68 S.Ct. 793, 803–04, 92 L.Ed. 1010, 1034–35 (1948); *Mendota Apartments v. District of Columbia Commission on Human Rights*, 315 A.2d 832, 836 (D.C.App.1974). Such an association of functions within an agency is not foreign to Rhode Island administrative procedures. *See Narragansett Electric Co. v. Harsch*, 117 R.I. 395, 400–06, 368 A.2d 1194, 1198–1202 (1977), in which we discussed the interrelation of adjudicative and adversarial responsibilities between the operations of the Public Utilities Commission and its administrative affiliate, the Division of Public Utilities and Carriers. The Supreme Court of the United States has ruled that in order to challenge an administrative process successfully on the grounds of a combination of incompatible

functions, a respondent must show that the procedures "pos[e] such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow*, 421 U.S. at 47, 95 S.Ct. at 1464, 43 L.Ed.2d at 724. A respondent who raises this sort of irregularity must overcome a "presumption of honesty and integrity in those serving as adjudicators," *id.*, which presumption is a validating feature of our entire system of administrative law as presently constituted.

■ We do not mean to suggest that the same men and women who preside at a hearing may involve themselves directly in either the preparation or the prosecution of an enforcement action. Such activities would raise constitutional issues of a wholly different order. General Laws 1956 (1979 Reenactment) § 28–5–19, by prohibiting a commissioner who is assigned to the preliminary hearing of a complaint from taking part in the final hearing except as a witness upon matters within his competence, demonstrates the sensitivity of the Legislature to the need to insulate decisionmaking commissioners from the preparation of a complaint and the making of a case against a respondent. Broadly speaking, the separation of functions that prevails in a modern administrative agency, allotting the prosecutorial function to a staff of attorneys or other personnel who will not participate in the eventual decision, is a common and recommended feature of American administrative enforcement activity. *Cf.* Administrative Procedure Act § 5(c), 5 U.S.C. § 554(d) (1976) (applicable to most federal agencies' formal adjudications). One need only to consider the workings of the Federal Trade Commission or the Securities and Exchange Commission, to name just two, to realize

8. We note that L'Auberge does not challenge the very maintenance of a proceeding before the commission in view of the asserted irregularity, but only the commission's issuing a subpoena duces tecum to its president. We admit some difficulty in seeing how the quashing of a subpoena duces tecum adequately cures the problem if, as L'Auberge contends, the purported attempt by the commission to strengthen the case against L'Auberge after a charge has been filed demonstrates an improper and unconstitutional adversarial stance on the part of the commission. To frustrate a tribunal's attempt to conduct an improper inquisition of a respondent would not appear likely to transform a biased, arbitrary, or unfair tribunal into a constitutionally adequate one.

that acceptable accommodation can be reached between the needs for aggressive enforcement of public–interest legislation and fairness to individual or corporate respondents, within the framework of a single agency's organizational processes.[9]

■ There is no indication from the record of the present case that the commission has not organized itself internally and employed procedures designed to ensure substantial fairness.[10] In the absence of evidence that the same individuals are involved in the building of an adversary case and the deciding of the issues, *see Wasson v. Trowbridge,* 382 F.2d 807, 813 (2d Cir. 1967); *Mendota Apartments,* 315 A.2d at 836, or that other special circumstances make the risk of unfairness intolerably high, *Withrow,* 421 U.S. at 58, 95 S.Ct. at 1470, 43 L.Ed.2d at 730, we cannot find that any "risk of actual bias or prejudgment," *id.* at 47, 95 S.Ct. at 1464, 43 L.Ed.2d at 724, is here presented. L'Auberge's argument is simply that fairness requires the commission habitually to desist from issuing subpoenas to aid investigative activities after a complaint has been filed. We are at a loss to understand how the dictates of fairness require this result. The mere issuance of a subpoena by itself is not susceptible of question; by analogy, the subpoenaing of witnesses for hearings, under the authority of G.L.1956 (1979 Reenactment) § 28–5–13(G) and Rule 15.01(a) of the Commission Rules and Regulations (1979), by the commission or a single commissioner and at the instance of any party to a contested case is basically a ministerial act and no more an exercise in bias or unfairness than the issuance of testimonial subpoenas by a judge in a civil or criminal case. Subpoenas intended to aid parties or the commission staff in fact–gathering involve the same principles. No one can convincingly suggest that judicial enforcement of demands for discovery, unless dispensed in an unfair manner, demonstrates impropriety through the alignment of the adjudicator with the litigant requesting production.[11] We are unconvinced that the issuance of a postcomplaint investigative subpoena to L'Auberge's president by itself justifies the conclusion that the adjudicative commissioners are improperly aligned with the accusatory function so as to prejudice L'Auberge unfairly on the eve of a contested hearing.

The appeals of L'Auberge and the commission are denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

---

9. Professor Kenneth Culp Davis, a leading authority in the field of administrative law, has furnished the instructive analogy that "it is not improper even in a criminal case for a large institution, the state, to prosecute through one officer, the prosecuting attorney, and to decide through another, the judge." Davis, *Administrative Law Text* 255 (3d ed. 1972). Thus, although it is possible to show improper bias in favor of the prosecution on the part of the judge, such bias will most certainly not be inferred from the fact that the two, in a sense, serve the same master.

10. We observe that the administrative complaint was brought in the name of the executive director of the commission, not in that of one of the commissioners.

11. *Cf. Richardson v. Perales,* 402 U.S. 389, 410, 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842, 857–58 (1971) (upholding the evidence–gathering activities of hearing examiners under the Social Security Act).