BUCKLEY D. STATES, APPELLANT, V. GLEN J. ANDERSON ET AL., APPELLEES.

364 N.W.2d 38

Filed March 22, 1985.   Nos. 84-283, 84-362.

J. Clark Noble of Aten, Noble & Ide, for appellant.

Anderson, Strasburger, Klein, Peterson and Swan, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

On December 6, 1983, Buckley D. States received a written notice of the termination of his employment as chief of police from the mayor of the city of Holdrege, Nebraska, Helen D. Anderson. That evening the appellant filed a written request with the civil service commission for an investigation and hearing.

On December 12, 1983, the commission published a notice in the Holdrege Daily Citizen to the effect that a public hearing would convene at 2:30 p.m., December 21, 1983, to investigate termination charges against States. The notice further provided that "all interested persons will be given an opportunity to be heard." Nine days before the hearing, States filed a motion with

the commission, requesting a list of witnesses and copies of the documents which the mayor intended to rely upon in support of his termination. This request was denied by the commission on the following day.

After the hearing the commission found that the termination of States' employment was justified. Upon appeal the district court affirmed the dismissal on the grounds that States had failed to follow proper administrative procedures in purchasing supplies and that he was insubordinate in failing to follow requests from the mayor to comply with such procedures. The district court taxed all costs, including preparation of the bill of exceptions, to the city of Holdrege, Nebraska.

The appeal is pursuant to Neb. Rev. Stat. §§ 19-1801 et seq. (Reissue 1983). Insofar as is relevant here, § 19-1808 provides:

> No person in the classified civil service, who shall have been permanently appointed or inducted into civil service under the provisions of sections 19-1801 to 19-1823, shall be removed, suspended, demoted, or discharged except for cause and then only upon the written accusation of the appointing power or any citizen or taxpayer. . . . Any person so removed, suspended, demoted, or discharged may, within ten days from the time of his removal, suspension, demotion, or discharge, file with the commission a written demand for an investigation, whereupon the commission shall conduct such investigation. The investigation shall be confined to the determination of the question of whether or not such removal, suspension, demotion, or discharge was made for political or religious reasons and in good faith for cause. After such investigation the commission may, if in its estimation the evidence is conclusive, affirm the removal. . . . All investigations made by the commission, pursuant to the provisions of this section, shall be by public hearing, after reasonable notice to the accused of the time and place of such hearing. . . . At such hearing the accused shall be afforded an opportunity of appearing, in person and by counsel, and presenting his defense. If such judgment or order be concurred in by the commission or a majority thereof, the accused may appeal therefrom to the

district court. . . . The district court shall thereupon proceed to hear and determine such appeal in a summary manner; *Provided*, that such hearing shall be confined to the determination of whether or not the judgment or order of removal, discharge, demotion, or suspension, made by the commission, was made in good faith for cause. No appeal to such court shall be taken except upon such ground or grounds.

In *Frederickson v. Albertsen*, 183 Neb. 494, 161 N.W.2d 712 (1968), we held that in an appeal to the district court under § 19-1808, the only issue is whether the commission's order was made in good faith for cause. However, in *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983), we considered a due process challenge. In *In re Appeal of Bonnett*, 216 Neb. 587, 344 N.W.2d 657 (1984), the only issue presented was the constitutional sufficiency of the notice of dismissal.

The issues raised by the appellant are (1) whether the commission's refusal to grant his requests for discovery, and whether the commission's consideration of sworn and unsworn statements of the public as evidence, denied appellant due process and (2) whether there was sufficient evidence to support the commission's findings.

In *Levos, supra* at 515, 335 N.W.2d at 267-68, the "essence of procedural due process" was set forth as

simply that fundamental fairness which a person has the right to expect—even demand—and receive through our system of law. For this reason, in proceedings before an administrative agency or tribunal which has jurisdiction, such as the hearing before the commission in the present case, procedural due process requires the following: notice reasonably calculated to inform one of the accusation levied; identification of the accuser; factual basis for the accusation; reasonable time and opportunity to present evidence concerning the accusation; and a hearing before an impartial board. Cf., *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970); *Brouillette v. Board of Dir. of Merged Area IX, Etc.*, 519 F.2d 126 (8th Cir. 1975). Under our standard of review, once the record discloses that those elements of due process existed with respect to the findings

and action of an administrative agency or tribunal, further judicial action is neither permissible nor required.

Appellant argues that pretrial discovery is among those due process elements absolutely imperative to a fair hearing. While that requirement is not specifically set forth in *Levos*, we believe that it was within the power of the commission to provide such discovery.

Section 19-1804(4) mandates that the commission has a duty to investigate and report upon all matters touching the enforcement and effect of the provisions of the civil service commission statutes. In conjunction with that duty § 19-1804(4) further provides:

> In the course of such an investigation, the commission, designated commissioner, or chief examiner shall have the power to administer oaths, issue subpoenas to require the attendance of witnesses and the production by them of books, papers, documents, and accounts, appertaining to the investigation, and to cause the deposition of witnesses, residing within or without the state, to be taken in the manner prescribed by law for like depositions in civil actions in the courts of this state. The oaths administered and subpoenas issued hereunder shall have the same force and effect as the oaths, administered by a district judge in a judicial capacity, and subpoenas issued by the district courts of Nebraska. The failure of any person so subpoenaed to comply therewith shall be deemed a violation of sections 19-1801 to 19-1823, and be punishable as such.

The commission, however, did not interpret this section as granting it the power to require any party to furnish to another party the names of witnesses, documents, or materials. Such an interpretation has the potential of rendering meaningless the provision of § 19-1808 that "the accused shall be afforded an opportunity of appearing, in person and by counsel, and presenting his defense." We think the better interpretation is that propounded in *La Petite Auberge v. R.I. Com'n for Human Rights*, ____ R.I. ____, 419 A.2d 274 (1980).

In *La Petite Auberge* the court held that under a statute similar to § 19-1804 (R.I. Gen. Laws § 28-5-13 (Reenactment

1979)), the commission has the responsibility to make its investigative and information-gathering powers available to parties to a contested proceeding. The court reasoned that an administrative hearing should be " 'less a game of blindman's buff [than] a fair contest with the basic issues and facts disclosed to the fullest practicable extent' " (quoting *United States v. Procter & Gamble*, 356 U.S. 677, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958)). 419 A.2d at 282. Accord, *Shively v. Stewart*, 65 Cal. 2d 475, 421 P.2d 65, 55 Cal. Rptr. 217 (1967); *Newman v. Bd. of Ed. of City School Dist. of N.Y.*, 594 F.2d 299 (2d Cir. 1979). As the court determined in *La Petite Auberge*, it would seem that the opportunity to conduct discovery is consistent with the goals of a fairly conducted and efficient hearing. Despite the permissive informality of civil service commission hearings as compared to court proceedings, the statute does not manifest a legislative intent to sacrifice a respondent's entitlement to fairness for the sake of such informality.

In *Wegmann v. Dept. of Registration & Educ.*, 61 Ill. App. 3d 352, 377 N.E.2d 1297 (1978), the plaintiff contended that he was denied due process by an administrative agency's refusal to grant his discovery requests. Considering the role of discovery in an administrative agency proceedings, that court said at 356, 377 N.E.2d at 1301:

> The purpose of pretrial discovery is to aid the party in preparation and presentation of his case or defense, assuring the truth and to eliminate as far as possible surprise, so that judgments will rest upon the merits and not upon the skillful maneuvering of counsel. (See *Stimpert v. Abdnour* (1962), 24 Ill. 2d 26, 179 N.E.2d 602; *People ex rel. Terry v. Fisher* (1957), 12 Ill. 2d 231, 145 N.E.2d 588.) Presumably, the need for discovery at the administrative level is the same, so as to require disclosure by the agency of evidence in its possession which might be helpful to an accused. (See Davis, Administrative Law of the Seventies §8.15 (1976); *Shively v. Stewart* (1966), 65 Cal. 2d 475, 421 P.2d 65, 55 Cal. Rptr. 217.) While an administrative body possesses broad discretion in conducting its hearings, its discretion must be exercised

judicially and not arbitrarily. *Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754; *Robert N. Nilles, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 890, 308 N.E.2d 640.

In this case the commission's failure to provide discovery did not prejudice the appellant or handicap his defense. At the hearing appellant's attorney made a statement on the record objecting to the commission's inaction in this respect. Yet, when asked if he desired a continuance so that the documents could be obtained by a deposition, the appellant's attorney declined, saying he was "willing to proceed." Furthermore, the examining officer granted the appellant a 5-minute recess during the course of the hearing to examine the documents in question.

The documents consisted of 24 invoices or statements for items States had requested and a summary statement of the fund balance for the fiscal year ending July 31, 1982. These documents, unaccompanied by purchase orders, demonstrated the appellant's failure to implement the mayor's purchase order system. The appellant now contends that by not being able to evaluate these documents in advance of the hearing, he lost the opportunity to tally the amounts involved and explain the circumstances involved surrounding each of them. Such an opportunity would not have altered the disposition of the case. Even if he had demonstrated that certain figures were incorrect or that he had a particular reason for not following the purchase order system, in each instance the gravamen of the complaint remains: he failed to follow the procedures set forth by the mayor.

The second portion of the appellant's contention that he was denied due process concerns the commission's permitting interested persons to make sworn and unsworn statements. The record indicates that the hearing lasted from 2:30 p.m. to 2:30 a.m. During the course of the proceedings, as it had stated it would do in its public notice, the commission received statements from persons in the audience. The commission permitted these persons to make sworn or unsworn statements, at their option, and did not require these persons to submit to cross-examination. Eight unsworn statements were recorded.

The appellant argues that this procedure turned a "public hearing" into a "public meeting" and that it deprived him of "knowing who he was going to face, what event they might testify to, of knowing when that event might have happened, of knowing where that event might have happened, or of giving him an adequate opportunity to obtain witnesses or documents to combat such type of testimony." Brief for Appellant at 26.

In the judgment affirming the order of the commission, the trial court commented on the way in which the commission had conducted the public hearing. The trial court stated:

> Although in the conduct of hearings, the Commission is not, pursuant to 19-1804 (5) R.R.S. 1943, bound by the technical rules of evidence, the findings and action of the Commission must still, nevertheless, in the final analysis and test be supported by competent evidence. Hearsay evidence does not constitute such evidence; nor does opinion evidence of a lay witness not rationally based on his perception; nor does evidence which is not relevant to the factual basis of the accusations which were in fact levied against the accused and upon which notice was given to him. Although pursuant to 19-1804(5) no informality in any proceeding or hearing or in the manner of taking testimony shall invalidate any order made by the Commission, the practice of taking sworn, as well as unsworn, statements of persons who have not been called as witnesses by the Appointing Authority, the accused, or the Commission, constitutes a procedure which should not be encouraged. It lends itself to the type of evidence described above as being incompetent, and the testimony so taken or permitted in this case is a good example of that. Section 19-1808 R.R.S. 1943 provides for a public hearing, not a public meeting.

Although the commission is not bound by technical rules of evidence, and no informality in any proceeding or hearing or in the manner of taking testimony shall invalidate any order made by the commission, the method in which the hearing was conducted is improper. Again, though, the admission of such testimony did not prejudice the appellant. The trial court found this testimony was incompetent, and thus it was not a basis for

that court's order affirming appellant's dismissal.

Since the appellant was not prejudiced by the claimed denial of due process, it is necessary to determine whether the evidence was sufficient to support the appellant's discharge. The standard of review was set out in *Ackerman v. Civil Service Commission*, 177 Neb. 232, 234-35, 128 N.W.2d 588, 590 (1964):

> Section 19-1808, R.R.S. 1943, provides that an employee who has been discharged may file with the civil service commission a written demand for an investigation. The commission then conducts an investigation to determine whether the discharge was made for political or religious reasons or in good faith for cause. If the commission finds that "in its estimation the evidence is conclusive," the commission may affirm the discharge or modify the order and direct a suspension or demotion.
>
> Section 19-1808, R.R.S. 1943, further provides that an employee may appeal from the order of the commission to the district court. The appeal is to be heard and determined in a summary manner. The review in the district court is limited to a determination of whether the order of the commission was made in good faith for cause.
>
> The act vests a wide discretion in the civil service commission but does not vest a similar discretion in the district court. The statute does not contemplate that the appeal to the district court shall be a trial de novo similar to the review on appeal of an action in equity. The purpose of the appeal to the district court is to permit the employee to obtain a determination only as to whether the order of the commission was made in good faith for cause. If the evidence in the district court is sufficient to show that the order of the commission was made in good faith for cause, then the order of the commission must be affirmed.

The record in this case demonstrates that the mayor established certain purchase order procedures within the police department as part of a plan to correct a $10,391 budget deficit in that department. The appellant admitted he had been told to implement this system; nonetheless, his testimony indicates that he failed consistently to use it. Section 19-1807 provides that a

person may be discharged for "(1) Incompetency, inefficiency or inattention to or dereliction of duty; (2) Dishonesty, intemperance, immoral conduct, insubordination . . . ." Within such limits the district court's order provided:

> With respect to the accusation that the Appellant was inefficient in the management and handling of his duties as Chief of Police in that he failed to follow proper administrative procedures in requesting the purchase of materials and supplies for use by the police department and also with respect to the accusation of insubordination in that he failed to comply with requests from the Mayor to follow efficient management procedures, the action of the Commission was based on competent evidence, was neither arbitrary or capricious nor the result of political or religious reasons, and was reasonably necessary for effectual and beneficial public service. The evidence is conclusive that the Mayor had instructed the Appellant to implement a purchase order system and that the Appellant failed to do so.

The record here contains sufficient evidence to support this finding.

The matter of costs remains to be considered. Neb. Rev. Stat. § 25-1711 (Reissue 1979) vests discretion in a court to tax costs as it "may think right and equitable." The district court did not elaborate on its reasons for taxing costs to the city, nor was it required to do so. Owing to the length of the proceedings, the manner in which they were conducted, and recognizing that only two of the numerous grounds originally stated for appellant's dismissal were supported by the evidence, the district court acted within its discretion.

The judgment of the district court is affirmed.

AFFIRMED.