DWIGHT W. STONE, APPELLANT, V. CITY OF OMAHA ET AL.,
APPELLEES.
424 N.W.2d 617

Filed June 24, 1988.   Nos. 86-524, 87-748.

Thomas J. Young, of Young, LaPuzza & Stoehr, for appellant.

Herbert M. Fitle, Omaha City Attorney, and Michael A. Goldberg for appellee.

HASTINGS, C.J., SHANAHAN, and FAHRNBRUCH, JJ., and RILEY and OTTE, D. JJ.

FAHRNBRUCH, J.

Dwight W. Stone, a plumbing inspector for 8½ years with the City of Omaha, appeals his two suspensions and later discharge for cause from that employment.

The Douglas County District Court dismissed Stone's petitions in error after finding that the Omaha Personnel Board's decisions upholding the suspensions and discharge were based upon competent evidence and were not contrary to law. We affirm the district court in each case.

The first suspension and later suspension and discharge cases were consolidated for argument and decision in this court. In the first case, Stone appeals a 5-day suspension for gross insubordination. In the second, he appeals a 15-day suspension and termination from employment for gross insubordination and use of indecent, vulgar language, which was found to be disruptive to the business operations of his employer, the planning department of the City of Omaha. Both cases revolve around Stone's refusal to install and use a two-way radio in his

private vehicle.

Stone assigns the same error in each case: (1) The trial court erred in determining that there was competent evidence in the record to support a finding that Stone was guilty of gross insubordination; and (2) the trial court erred in determining that a "Memorandum of Understanding" between the city and union was a valid agreement.

> Because this is a proceeding in error, the task of this court is, as was that of the district court, to determine whether the [Omaha Personnel Board] "acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision." . . . [T]he evidence is sufficient as a matter of law if the board could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.

*Trolson v. Board of Ed. of Sch. Dist. of Blair, post* p. 37, 424 N.W.2d 881 (1988); *Meier v. State*, 227 Neb. 376, 417 N.W.2d 771 (1988).

In February of 1984, the City of Omaha purchased two-way radios for use by plumbing inspectors in their private vehicles while they were on the job. Appellant's union filed a petition with the Nebraska Commission of Industrial Relations seeking a ruling on the financial liability inherent in the installation of the radios. The CIR ordered the parties to bargain with respect to that issue. Negotiations between the city and the union resulted in a "Memorandum of Understanding." Under this agreement, the city assumed full liability in the event an inspector's radio was damaged, lost, or stolen. Further, the city agreed to pay up to $100 toward the repair of damage to an inspector's vehicle caused by the theft or attempted theft of the radio equipment. This memorandum was not submitted to the Omaha City Council, which Stone claims was required for the agreement to become binding. The city adduced evidence that city council action was not required. There is also a conflict in the evidence as to whether the agreement was submitted to union membership for approval. Ed Cox, president of Stone's union, testified that the agreement was presented to the union membership at its January 1985 meeting. All of the members voted in favor of the agreement except for Stone, according to

Cox. When asked if the union's agreement with the city had been submitted to the union members, Stone stated, "I never seen one."

In October of 1984, Stone was issued a 5-day suspension for refusal to allow the installation of a two-way radio in his vehicle. This suspension was withdrawn by the city after Stone agreed to follow all departmental policies and procedures in the future, including use of the grievance procedure set forth in his union's contract with the city. This agreement was reduced to writing in letter form, dated November 28, 1984. It was signed by Stone and transmitted to Omaha's planning director.

Thereafter, Stone used the radio only sporadically. He also kept the radio at night rather than checking it out in the morning and returning it after work to a designated area, according to established written procedure. Stone admittedly was aware of this procedural requirement. On February 25, 1985, Stone was notified, in writing, that he would be suspended for 5 days. The reasons given for his suspension were (1) failure to use the radio; (2) refusal to properly install the radio in his vehicle; (3) failure to abide by the check-in and check-out procedure; and (4) failure to abide by his commitment of November 28, 1984.

Stone's appeal of the suspension to the City of Omaha Personnel Board was denied, and his petition in error to the district court was dismissed after hearing. He appealed to this court, but the story does not end there.

On the advice of his attorney, Stone installed the radio in his personal vehicle himself and began using it consistently. In January of 1986, Stone's vehicle became unusable, requiring the purchase of a new one. Stone rented vehicles until he purchased a new pickup on March 27, 1986, and he was not required to use a radio in the rented vehicles. In his mileage report dated April 28, 1986, Stone indicated that he had used a rented car, even though he had been driving the new pickup since March 27.

Stone's supervisor, Phil Lynch, testified that he told Stone 10 or 12 times to have the two-way radio installed in his pickup. Finally, on April 18, 1986, Stone was advised by Lynch, in writing, to have a two-way radio installed in the new pickup by

April 24 or give a reason why it could not be installed. On April 28, 1986, when Lynch returned from vacation, he confronted Stone with his failure to install the radio. A heated discussion ensued, culminating with Stone's telling Lynch: "You can stick that radio in your ass or anybody else's ass. . . . I'm not putting that son of a bitch in my car. . . . If you don't look out, I'm going to punch you in the nose." Stone was suspended and then discharged as a result of this incident.

Stone claimed he wanted to wait to have the radio installed until the pickup was licensed. Neb. Rev. Stat. § 60-320(3)(b) (Reissue 1984) required Stone to have the pickup licensed by April 11, 1986. Stone claims that he was not treated in the same manner as other inspectors who had purchased new vehicles. He also claims that the "Memorandum of Understanding" was no longer in effect at the time of his discharge. Stone's union president testified the agreement was still in effect. Stone's appeal to the Omaha Personnel Board was again denied, and his petition in error to the district court was also dismissed, after hearing.

Stone first assigns as error the district court's finding that there was sufficient evidence of his insubordination. The record simply does not support Stone's contention. Stone was ordered to have the radio installed in his private vehicle, to use the radio during his work hours, and to comply with check-in and check-out procedures. Stone's refusal to follow these orders is sufficient evidence of gross insubordination to support the 5-day suspension. As to his 15-day suspension and termination, Stone argues that he never received a direct order to install and use the radio in his new pickup. This contention is without substance.

Lynch testified that he and Stone discussed installation of the radio in Stone's pickup 10 or 12 times. Stone admits Lynch had asked about the radio many times. Stone knew the radio needed to be installed; he simply failed to have it done.

Assuming, arguendo, that none of Lynch's oral statements were "orders," Stone was given a written directive on April 18, 1986, to have the radio installed in his vehicle within 6 days or give a reason why it could not be installed. Clearly, this memorandum was a direct order. Lynch confronted Stone with

his failure to comply with that order. Rather than explain himself, Stone became vulgar and abusive and reiterated his refusal to install the radio. There is sufficient evidence in the record to support Stone's 15-day suspension and termination for gross insubordination and for the use of indecent, vulgar language.

Stone's next assignment of error is the district court's finding in each case that the memorandum of understanding between the City of Omaha and the union was a valid agreement. In the first case, the district court explicitly found the agreement valid. Its validity is implicit in the court's decision in the second case.

In its order dated July 19, 1984, the CIR directed that installation of the radios in inspectors' vehicles cease until an agreement between the union and the City of Omaha was reached on the issue of liability. The union and the City of Omaha did reach an agreement. Stone contends that the memorandum of understanding, which is the written embodiment of that agreement, is invalid because it was not submitted to the Omaha City Council for approval.

Stone claims that the Omaha home rule charter requires direct approval by the city council of all agreements between the city and a union. Only a portion of Omaha's home rule charter is in evidence. That portion makes no reference to the type of labor dispute involved here. Kent Whinnery, counsel for the City of Omaha, testified that under a city ordinance it was within his authority to approve this agreement, which he did, because it was a settlement of litigation filed with the CIR which did not entail expending more than $2,500. Nothing in the record disputes that testimony. As previously stated, except for Stone, union members present at a meeting approved the agreement. Therefore, the district court was correct in finding that the memorandum of understanding between the city and the union was valid.

The decision of the district court dismissing Stone's petition in error in each of these cases was correct and is affirmed.

AFFIRMED.