GEORGE R. GERINGER, APPELLANT, V. CITY OF OMAHA ET AL., APPELLEES.

468 N.W.2d 372

Filed April 25, 1991.   No. 89-056.

Thomas J. Young, of Young & LaPuzza, for appellant.

Kent N. Whinnery, Deputy Omaha City Attorney, for appellees.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

George R. Geringer appeals his dismissal on May 3, 1988, by the Omaha Planning Department from his position as a Community Developer II in the urban planning division of that city. His dismissal was upheld, after notice and hearing, by the Omaha Personnel Board, and, upon appeal, it was sustained by the district court. We affirm.

His dismissal was premised on two grounds: (1) He had violated his outside employment limitations, and (2) he had given "misleading" statements to his superiors.

Appellant assigns as error (1) insufficient competent evidence, (2) that the board's findings were arbitrary and capricious, and (3) denial of due process for the personnel board's refusal to allow his rebuttal evidence.

Appellant was originally hired by the city in 1974 as a Community Developer II. In 1981 he was designated the executive director of the Land Reutilization Authority (LRA). Its main function is to sell foreclosed tax-delinquent property and return it to the tax rolls. His duties included inventory, management, and eventual sale of the LRA properties. On March 23, 1983, appellant was removed as director, and he resumed his position as a full-time Community Developer II up to the time of his dismissal.

Shortly after his removal as director, appellant sought permission from the city to engage in outside employment. On July 14, 1983, he submitted a memorandum and, on July 18, an application requesting approval of outside employment, in compliance with Omaha Mun. Code, ch. 23, art. III, § 23-99 (1980), which in part provides:

> 2. Employees covered by Chapter 23 shall not engage in any business or occupation nor be employed in any capacity other than his or her position in the City service unless permission for such outside activity has been obtained in writing from the department head and approved by the Personnel Director.

The outside employment was as a "consultant" for a

corporation known as General Capital Corporation (hereinafter GCC). GCC was incorporated by friends of the appellant's, including his wife, Patricia Geringer, for the purpose of investing in LRA properties and other types of "inter-city" (which, from the context of the record, we assume must mean "inner-city") redevelopment ventures. Because GCC was involved in city-related projects, the planning department was concerned about a possible overlap or conflict between appellant's employment with GCC and his position in the planning department. Therefore, the planning department required that a specific limitation be added to appellant's approval to engage in outside employment with GCC. That disclaimer/limitation provided: "While being employed by the City of Omaha, Planning Department, I will not engage whatsoever in any activity as a representative or employee of General Capital Corporation that is part of or related to any program or project of the Planning Department." The appellant signed the statement on August 1, 1983.

Appellant's discharge grew out of his activities involving real estate located at 3019 Corby Street in Omaha (Corby Street property). During the summer of 1983, he advised GCC to purchase the Corby Street property from the LRA. The Corby Street property had been foreclosed for delinquent taxes, and it was listed among the LRA inventory properties. In 1983, the LRA's sale process generally was as follows: A prospective purchaser would contact the LRA director. Once a price had been negotiated and a commitment had been received from the purchaser, the LRA director would take that offer to the LRA board for approval of the sale. If the sale was approved, then the property would be paid for by the purchaser. The LRA director would then request a deed through the county attorney's office. The county attorney would move that the district court confirm the sale of the property, and eventually a sheriff's deed to the property would be produced and delivered to the LRA for the purchaser. This whole process generally took at least 60 to 90 days.

Most LRA inventory properties are either vacant lots or uninhabitable houses. The Corby Street property was neither. It was a house inhabited by people purchasing it under a land

contract; consequently, it was an attractive investment.

In late March 1983, GCC's representative, Claude Shokes, contacted Stanley Saklar, appellant's successor as director of LRA, to negotiate a purchase of the Corby Street property. Saklar had no knowledge of appellant's association with GCC or that appellant's approval for outside employment with GCC was expressly limited by a caveat forbidding appellant from involving himself as a representative of GCC in planning department activities. Saklar and Shokes negotiated the sale of the Corby Street property, including this unusual event: During the process of their negotiations, a deed dated May 31, 1983, to the Corby Street property was inexplicably sent to the LRA. Under LRA procedure, only the LRA director had the authority to request the deeds to LRA inventory properties. The LRA director would not request a deed until such time as he had received a commitment from a buyer to purchase the property, approval from the LRA board to make the sale, and money from the purchaser. Here, Saklar had neither requested the deed nor negotiated a sale of the Corby Street property at the time the deed was dated. The sale was consummated, and eventually the property was recorded in the name of the appellant and his wife.

In 1984, after GCC had purchased the Corby Street property, the city received a complaint from a citizen that appellant had participated in a process that dispossessed a family of its home at the Corby Street address. In the investigation that followed, Martin Shukert, the city planning director, sent a letter to appellant and asked for a response in writing with respect to "any connection that you [appellant] or Ms. Geringer [appellant's wife] may have had with the sale or management of 3019 Corby." The appellant responded, "I . . . am not affiliated with General Capital Corporation. I can not confirm the ratification of sale of 3019 Corby Street because the records of [the corporation] are not privy to me." Based upon that information Shukert concluded that there were no grounds for any further action. Later, Shukert discovered the appellant was present at the GCC board meetings at which the purchase of the Corby Street property was discussed and the transaction approved; the appellant, as part of his compensation as

consultant for GCC, had an ownership interest in GCC; and the appellant was at one time the fee title owner of the Corby Street property. This further information, viewed in light of the appellant's earlier denial of any knowledge of or involvement with or in the Corby Street property, prompted Shukert to recommend the appellant's discharge from the city's employ.

On April 14, 1988, the Omaha Planning Department ordered appellant's suspension and dismissal based on two areas of inappropriate conduct: first, that appellant was involved in the purchase of property at 3019 Corby Street, which was contrary to his outside employment disclaimer/limitation, and second, that during the course of an investigation, the appellant gave "misleading" statements concerning his knowledge of the facts surrounding the purchase of the Corby Street property.

Appellant prosecuted an appeal to the Omaha Personnel Board, and following a hearing on June 30, 1988, that appeal was denied by a vote of 4 to 0. An error proceeding was then prosecuted to the Douglas County District Court, which affirmed the decision of the personnel board.

## SUFFICIENCY OF THE EVIDENCE

Appellant contends that the district court erred in finding that there was competent evidence to support the personnel board's decision and in finding that the decision was not arbitrary and capricious.

The standard of review in an error proceeding involving an administrative agency is that both the district court and the Supreme Court review the record to determine whether the agency acted within its jurisdiction and whether there is relevant evidence to support the decision. *Wadman v. City of Omaha*, 231 Neb. 819, 438 N.W.2d 749 (1989); *Stone v. City of Omaha*, 229 Neb. 10, 424 N.W.2d 617 (1988). Further, the reviewing court is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact, and the evidence is sufficient to support an administrative agency's decision if the agency could reasonably find the facts as it did based on the testimony and exhibits contained in the record. *Wadman v. City of Omaha, supra; Stone v. City of Omaha, supra.*

The personnel board found that the appellant's dismissal was supported by evidence in the following particulars:

> [A]ppellant was found to have violated the limitations upon which he was granted permission to engage in outside employment. More specifically, appellant was found to have involved himself in the corporate business matters of GCC wherein such corporate business matters involve the City of Omaha and/or property under the administration or control of the City, and furthermore that appellant purposely misstated the extent of his involvement and knowledge to his supervisor regarding events culminating in the purchase of LRA property by GCC.

First, we consider whether the appellant violated the provisions of the disclaimer/limitation statement. On July 14, 1983, the appellant sent an interoffice memo to his immediate supervisor, Frank Mann, requesting approval for outside employment, saying he "[had] been offered an opportunity to work as a part-time consultant to the General Capital Corporation of Omaha" and that he "[had] reviewed the corporation's expectations . . . and [found] no conflict involving labor standards or current city duties." Further, he said that should he find a conflict of duties between corporation expectations and his current job obligations to the city, he would discuss the situation with the department immediately.

Because GCC was actively involved in "inter-city" redevelopment projects, appellant was asked to sign a disclaimer/limitation statement which expressly proscribed him from "engag[ing] whatsoever in any activity as a representative or employee of [GCC] that is part of or related to any program or project of the Planning Department." On August 16, 1983, the application was approved after appellant had signed the disclaimer/limitation statement and, in addition, he assured Mann and Shukert that if any conflict or overlap of duties arose between his jobs, he would immediately bring it to their attention.

The record shows that appellant did engage in consulting activities with GCC which directly related to a program under

the administrative control of the planning department. During the summer and fall of 1983, he attended periodic board meetings of GCC and he actively advocated the purchase of the Corby Street property to the GCC board members. In April 1984, GCC purchased the Corby Street property from LRA. The date on the deed, May 31, 1983, is not explained.

Concerning any official misstatements, Shukert sent an interoffice memo to the appellant on August 24, 1984, asking him to explain any connection that he may have had with the sale of the Corby Street property. That same day, the appellant returned a letter to Shukert which stated, "I can not confirm the ratification of sale of 3019 Corby Street because the records of [GCC] are not privy to me."

Later investigation established that appellant did have access to the GCC records because he had an ownership interest in GCC. Michael F. Wheeler, a GCC board member, testified that "there's no doubt that [the appellant] knew that [GCC] purchased the property," that appellant had participated in GCC board meetings where the purchase of the Corby Street property was discussed, and that appellant had advocated its purchase by the corporation.

Clearly there was sufficient competent evidence to support the action taken by the Omaha Personnel Board, and appellant's first assignment of error is without merit.

Appellant's second assigned error is not addressed, since it is not discussed in his brief. See *In re Interest of N.L.B.*, 234 Neb. 280, 450 N.W.2d 676 (1990).

## DUE PROCESS

Last, appellant contends that during the personnel board hearing, he was denied due process of law because he had no opportunity to rebut statements made against him.

In *States v. Anderson*, 219 Neb. 545, 364 N.W.2d 38 (1985), this court stated:

"[Procedural due process is] simply that fundamental fairness which a person has the right to expect—even demand—and receive through our system of law. For this reason, in proceedings before an administrative agency or tribunal which has jurisdiction . . . procedural due process

requires the following: notice . . . identification of the accuser; factual basis for the accusation; reasonable time and opportunity to present evidence concerning the accusation; and a hearing before an impartial board. . . . Under our standard of review, once the record discloses that those elements of due process existed with respect to the findings and action of an administrative agency or tribunal, further judicial action is neither permissible nor required."

*Id*. at 547-48, 364 N.W.2d at 40, quoting *In re Appeal of Levos*, 214 Neb. 507, 335 N.W.2d 262 (1983).

In his brief, appellant indicates that he would have called himself, his wife, and Shukert to rebut allegations raised in the testimony of Gary Carlson, a city witness. Such proposed evidence was not offered at the hearing, nor was an offer of proof made that would preserve the issue for our examination. Counsel stated, "You don't allow redirect or rebuttal anyway," and closing arguments followed.

Appellant does not discuss the application of the rules in *States, supra*; rather, he improperly relies on *U. S. v. Storer Broadcasting Co.*, 351 U.S. 192, 76 S. Ct. 763, 100 L. Ed. 1081 (1956), an adjudication which specifically provided a right to present rebuttal evidence under 47 U.S.C. § 309 (1952) of the federal communications act.

Here, the procedural due process protections as set out in *States, supra*, were fully met in all respects at the hearing before the personnel board. Appellant was denied neither a substantial right nor due process.

AFFIRMED.

CAPORALE, J., not participating in the decision.