DECISION
Before the Court is the appeal of plaintiffs, Vincent and Dolores LaPrade (plaintiffs), filed pursuant to G.L. 1956 §42-35-15, seeking judicial review of a final decision of the Coastal Resources Management Council (CRMC) denying plaintiffs application to construct a residential dwelling in Warwick.
In early 1993, the plaintiffs filed an application with the CRMC seeking a variance pursuant to Section 120 of the Coastal Resources Management Program (CRMP) to construct and maintain a two-bedroom residential dwelling to be served by a standard on-site individual sewage disposal system and municipal water service. The proposed location consisted of two lots on Pine Grove Avenue identified as Tax Assessor's Plat 362, Lots 268 and 269. The two lots abut Brushneck Cove, which empties into Greenwich Bay. Plaintiffs' original application called for the dwelling to be built almost wholly within 50 feet of the coastal feature. Section 140 of the CRMP requires a setback of not less than 50 feet from the inland boundary of the coastal feature. This original application received approval from the Zoning Board of the City of Warwick and from the Division of Environmental Management. The staff of the CRMC conducted site visits and in response to a number of concerns of the staff, plaintiffs made changes to their plan, reducing the size of the dwelling and moving it farther inland. The addition of incinerator toilets to the 1505 system was also proposed. On October 26, 1993, the attorney for the plaintiffs appeared before the CRMC and requested a continuance on the hearing of plaintiffs application noting that ". . . we've submitted an amendment to the plat plan, to the staff tonight, as a result of meetings of our biologist with the staff. . . ." (Transcript at 7). An Engineer's Report was prepared by the staff of the CRMC on November 2, 1993, which indicated that the plans submitted on October 26, 1993 were deficient and unacceptable for staff review. The report noted that alterations to plaintiff's application included a reorientation of the septic tank and driveway and a reduction in the size of the dwelling. It was also noted that there was no apparent authorization of the modifications by both the DEM ISDS section and the local building official. Finally, the report also noted discrepancies in reference to the location of the coastal feature when one compared the amended plans with those originally submitted.
Plaintiffs' attorney appeared before the Council for the second time on November 23, 1993. Also present at that time was the Executive Director of the CRMC, Mr. Grover Fugate. Mr. Fugate informed the plaintiffs that the CRMC staff had some discussions with the City of Warwick regarding plaintiffs' proposal and a fax had been received that day from the city indicating that because of the changes that had been made, it was the opinion of the Planning Department and the Building Official that new zoning approval was required. Plaintiffs were then informed by CRMC counsel that because their modified application lacked the prerequisite local approval, the application would not be considered at that time.
Plaintiffs appeared before the CRMC for the third time on January 25, 1994. At that meeting, the Council heard testimony from plaintiff Vincent LaPrade and from Mr. Paul Shea, an expert in the area of biology, in support of the application. The Council also heard testimony from a number of objectors, including a representative of Save the Bay, a member of the Audubon Society, a representative of a local shell fisherman's association, and three neighboring landowners. At the conclusion of the hearing, a vote was taken, and plaintiff's application for the variance was unanimously denied. A written decision followed on May 6, 1994. Plaintiffs filed a timely appeal with this Court.
Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L. § 42-35-15 (g), which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, etal. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
Review of CRMC's Decision
On appeal, plaintiffs argue that the CRMC violated the provisions of the Rhode Island Administrative Procedures Act in conducting its hearing and rendering its decision. Specifically, the plaintiffs argue that the CRMC's decision was made upon unlawful procedure and the findings of fact were not supported by the evidence presented and are clearly erroneous. In support of their argument, the plaintiffs contend that the hearings were not conducted in a fair manner and that the CRMC participated in ex parte communications in violation of the Administrative Procedures Act. The CRMC avers that the plaintiffs were given a fair and impartial hearing, and the decision was supported by ample record evidence.
The plaintiffs contend that the hearing was not conducted in a fair manner. First, the plaintiffs maintain that they were ready to proceed at the scheduled hearings, but the hearings were continued. CRMC Management Procedures § 5.7 states: "During a hearing, if it appears in the public interest or in the interest of justice that further testimony or argument should be received, the Council or Subcommittee may, in its discretion, continue the hearing. . . ." Additionally, § 5.11 states that "The Council . . . may at any time order a continuance upon its own motion." According to the statute, the Council clearly has the authority to continue hearings to explore further testimony. Although plaintiffs argue that they were ready to proceed at the initial hearing on October 26, 1993, a review of the record indicates that it was the plaintiffs who requested a continuance because they had submitted an amended plan to the CRMC that very day. As such, the record does not reveal a violation on the part of the CRMC that would indicate an unfair hearing or unlawful procedure such that substantial rights of the petitioners were prejudiced.
With respect to the fairness of the hearing, the plaintiffs next contend that the hearing officer was biased, engaged in heated exchanges with the plaintiffs and was "play[ing] the role of the hatchet man to defeat the application". (Plaintiffs' Memo at 13). CRMC responds that no bias or prejudice was exhibited by CRMC members, and the interrogation merely constituted fact-finding.
An administrative hearing officer is not required to assume a wholly passive role and is free to interrupt and question witnesses when necessary to seek a clarification of the testimony. However, the officer must be impartial and must not attempt to establish proof to support the position of any party to the controversy. Davis v. Wood, 427 A.2d 332, 337 (R.I. 1981). While the record evidences that the remarks made by certain members of the Council may have been inappropriate and suggestive of impatience or petulance, the record does not reveal bias or partisanship with respect to the agency decision. See, Zimarino v.Zoning Board of Providence, 95 R.I. 383, 187 A.2d 259 (1963). Rather, the CRMC's repeated questioning demonstrates an attempt at clarification of testimony due to the evasive and contradictory evidence given by Mr. LaPrade.
Third, the plaintiffs argue that the commission did not allow them to cross-examine all witnesses during the hearing. In particular, plaintiffs contend that they were denied the opportunity to cross-examine a neighboring objector. Plaintiffs also note that their counsel was never specifically asked by the Council whether he wanted to cross-examine any witness.
General Law 42-35-10 (c) provides that a party may conduct cross-examination for a full disclosure of the facts. (Emphasis added.) However, an expert administrative tribunal is not rigidly governed by the same formal rules designed for trials and juries.See, e.g., DePasquale v. Harrington, 599 A.2d 314 (1991); and LaPetite Auberge v. R.I. Com'n. for Human Rights, 419 A.2d 274
(1980). Additionally, the provisions of § 42-35-10 (a) entrust the hearing officer with both the ability to exercise prudence in considering evidence and the reliability that must condition its admissibility. DePasquale, 599 A.2d at 319. Because non-expert testimony of an unrepresented neighbor is not formed from an impartial and professional perspective, it is generally of little probative force. See, Salve Regina v. Zoning Board ofReview, 594 A.2d 878, 881 (R.I. 1991).
The lack of cross examination with respect to the testimony of the unrepresented neighbor does not evidence unfairness or unlawful procedure such that substantial rights of the plaintiffs were prejudiced. In fact, a review of the record demonstrates that the plaintiffs' attorney did in fact cross examine a number of other witnesses throughout the hearing.
The plaintiffs additionally argue that the CRMC engaged in ex parte communications. Specifically, the plaintiffs contend that the CRMC staff communicated with the City of Warwick regarding the plaintiffs' application. Plaintiffs showed that the fax CRMC had received on November 23, 1993, which contained the building officials' opinion that new zoning approval was needed, had originated at CRMC's Wakefield office and was faxed from there to the City of Warwick for the signature of the Building Official and then was subsequently faxed back to the CRMC. Plaintiffs also produced a letter sent by a neighboring land owner's counsel to the CRMC director urging assistance in defeating plaintiffs' application. On behalf of the communications with the City of Warwick, Mr. Fugate explained at the January 25th hearing that "Staff was merely checking to make sure it (plaintiff's amended plan) had local approval."
Ex parte consultations are governed by G.L. 1956 §42-35-13 which states in pertinent part:
 Unless required for the disposition of expert matters authorized by law, members or employees of an agency assigned to render an order or to make findings of fact and conclusions of law in a contested case shall not, directly or indirectly, in connection with any issue of fact, communicate with any person or party nor in connection with any issue of law, with any party or his or her representative, except upon notice and opportunity for all parties to participate. . . .
For the correspondence between the CRMC and the City of Warwick to fall under the statute's ambit, the communications in the present case must concern an issue of fact. An issue of fact arises upon a denial in the answer of a material allegation of the complaint or in the reply of a material allegation in the answer. Black's Law Dictionary, 831 (6th ed. 1990). In this case, the CRMC's checking whether the required zoning approval had been obtained by Mr. LaPrade does not qualify as an issue of fact but merely as a matter of public record necessary for further review of their application.
The plaintiffs' final argument is that the findings of fact made by the CRMC are clearly erroneous and not supported by the evidence. Alternatively, the CRMC avers that the findings of fact were amply supported by evidence of record and included that the plaintiffs caused their own undue hardship. Section 120 of the CRMP allows the granting of a variance if the Council finds that the following five criteria are met:
 (1) The proposed alteration conforms with applicable goals and policies [of the CRMP].
 (2) The proposed alteration will not result in significant adverse environmental impacts or use conflicts.
 (3) Due to conditions at the site in question, the standard will cause the applicant an undue hardship.
 (4) The modification requested by the applicant is the minimum necessary to relieve an undue hardship.
 (5) The undue hardship is not the result of any prior action of the applicant.
In its written decision, the CRMC adopted the incorporated findings of its staff engineer and biologist, finding that none of the five criteria was met. Specifically, the Council found that the dwelling was sited as close as 29 feet from the top of the coastal bank and that the entire lot consisted of approximately 8000 square feet of which approximately half consisted of marshland. See, CRMC Category "B" Biologist Report; Sept. 17, 1993. The Council also found, inter alia, that no buffer zone had been proposed by plaintiffs, that the septic system design may not be adequate to mitigate the levels of nitrogen and bacteria entering Brushneck Cove, that the soils in the vicinity were highly permeable and may not provide sufficient detention of runoff, and that the dwelling had the potential to degrade the scenic wildlife and plant habitat of the shoreline.Id.; See also, Category "B" Engineer's Report, Aug. 27, 1993.
However, plaintiffs argue that the Council incorrectly determined the location of the coastal feature and therefore the figures indicating the dwelling's proximity to the coastal feature are also incorrect. Plaintiffs contend that the Council relied on erroneous figures indicating the dwelling's proximity to the coastal feature and made an incorrect determination regarding the inadequacy of their septic system. Conversely, the CRMC notes that it relied on figures provided by its staffs' determinations and measurements, and its findings followed from the reports of its engineers and biologist. The Council may rely on its own expert staff and is authorized to engage its own experts. See, e.g., Strafach v. Durfee, 635 A.2d 277 (R.I. 1993) and G.L. 1956 § 46-23-14.
Additionally the CRMC's decision based on CRMP § 120 is supported by evidence that the plaintiffs may have caused their own undue hardship. The CRMC was aware that originally the two lots in question were part of a large parcel that was divided into three substandard two lot parcels. Evidence was presented that indicated Mr. LaPrade and another individual had owned and previously built on adjoining lots 266 and 267. In response, Mr. LaPrade presented evidence that he was never the legal owner of the adjoining lots 266 and 267.
Furthermore, there is ample evidence on the record to support the CRMC's decision that the plaintiffs did not meet the remaining criteria necessary to obtain a variance pursuant to CRMP § 120, namely, that the proposed alterations did not conform with the applicable goals and policies of the CRMP and the proposed alterations would result in significant adverse environmental impacts or use conflicts
After review of the entire record, this Court finds that the agency decision is supported by the reliable, probative and substantial evidence of record and was not made upon unlawful procedure. Substantial rights of the plaintiffs have not been prejudiced. Accordingly, the May 6, 1994 CRMC decision is affirmed.
Counsel shall submit the appropriate judgment for entry.