DECISION
This is a timely appeal by Donald Letts (appellant) from a Final Order of the Building Contractors' Registration Board (Board) dated November 15, 1996. The appellant seeks reversal of the Final Order. Jurisdiction is pursuant to G.L. 1956 §42-35-15.
 Facts/Travel
On April 6, 1996, the appellant entered into a contract with David and Tracy Brouillard (Brouillards) to perform renovations to their home at 23 Francis Road in Glocester, Rhode Island. The renovations included the installation of vinyl siding, slider doors and a new driveway. Several months after the project was completed, the Brouillards discovered that sections of the vinyl siding were missing and that the slider doors leaked and retained condensation. In addition, the middle portion of the driveway sank. The Brouillards contacted the appellant on several occasions and requested that he repair the defects. Although the appellant sent someone to the Brouillards' home to repair the defects, the Brouillards were not satisfied with the repair work.
On February 22, 1996, the Brouillards filed a claim with the Board requesting damages for the alleged negligent work. On March 7, 1996, an investigator for the Board viewed the work site and submitted a written report confirming the Brouillards' allegations that the entire driveway needed to be replaced and that several sections of vinyl siding were missing. On August 23, 1996, the Board mailed a notice of hearing on September 17, 1996. Both parties received the notice, but neither party requested a continuance. (Audio Record).
A hearing was held on September 17, 1996, which the appellant did not attend. At the hearing, in addition to Tracy Brouillard's testimony regarding the aforementioned defects, the Brouillards submitted two estimates to support their claim for damages. The first estimate was from Atlantic Paving Engineering Co. Inc., dated May 6, 1996, in the amount of $2,340 to repair the defective driveway. The second estimate was from Stormtite Company Inc., (Stormtite), dated May 7, 1996, in the amount of $2,218 to repair the defects in vinyl siding and trim. (Ex. 1.) On September 23, 1996, the hearing officer issued a Proposed Order directing the appellant to return $4,518 to the Brouillards and to pay a $500 fine to the Board. The appellant appealed the Proposed Order to the full Board, and the appeal was heard on November 14, 1996.
At the November 14 hearing, the appellant contended that he was denied the right to be heard through ineffective notice of hearing. The appellant contended and the Board acknowledged that on September 9, 1996, after the appellant had received the notice of the September 17 hearing, he had a conversation with George Whalen, (Whalen), the Executive Director of the Board, regarding a possible settlement of the claim. The appellant maintained, however, that Whalen was supposed to contact the Brouillards and report back to the appellant. The appellant testified that because he never received a phone call from Whalen, he had believed that the September 17 hearing was continued. (Audio Record). Furthermore, the appellant maintained that he was unable to attend any hearings because he was "functionally blind at all times relative to the scheduled hearings in this matter." (Audio Record). As proof of his assertion, the appellant introduced into evidence a letter dated October 29, 1996 from Dr. Lucy Young, asserting that she had performed an eye procedure on the appellant on June 12, 1996, which rendered him homebound until October 1, 1996. As a result, the plaintiff contended that he should be afforded a new hearing.
After the presentation of the testimony, the Vice Chairman of the Board, Edgar N. Ladouceur (Ladouceur), who is also the president of Stormtite, recused himself from the Board's vote because of a conflict of interest. In order to comply with G.L. 1956 § 36-14-6 (1), Ladouceur signed a statement recusing himself from participating in the discussion of or taking official action on the appeal because of said conflict.[1] (11/14/96 Statement of Conflict of Interest pursuant to R.I. Gen. Laws § 36-14-6). In his signed statement Ladouceur noted; "I am acquainted w/Attorney for the Home Owner." (Ex. 2.) After recusing himself from the matter after the hearing, Ladouceur remained with the Board during its closed discussion of the appellant's appeal. The Board unanimously voted, with the exception of Ladouceur, to uphold the hearing officer's decision. On November 15, 1996, the Board issued a Final Order directing the appellant to return $4,518 to the Brouillards within 30 days or to face a $500 fine and suspension of his registration. On November 26, 1996, the appellant filed a timely appeal with this Court.
In this appeal the appellant argues, inter alia, that the Board's decision was fatally tainted by Ladouceur's conflict of interest. Specifically, the appellant argues that the hearing process was "tainted" because Ladouceur participated in the hearing process while he was the president of Stormtite, the company which inspected the Brouillards' property and whose estimate supported one-half of the Board's award of damages. In contrast, the State contends that Ladouceur's submission of an estimate to the Board did not create a conflict of interest under the Code of Ethics. In support of its position, the State relies upon the Rhode Island Ethics Commission Advisory Opinion No. 96-81.[2] Specifically, the State argues that Ladouceur did not have a financial interest which was in substantial conflict with the proper discharge of his duties under G.L. 1956 §36-14-5.[3] Additionally, the State argues that Ladouceur's recusal and abstention from the Board's vote "diminishes Lett's argument that his due process rights were violated." Alteratively, the State argues that this Court is not the proper forum to determine whether a conflict of interest exists.
 STANDARD OF REVIEW
The review of a decision of the Board by this Court is controlled by R.I.G.L. § 42-35-15 (g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Util. Comm'n.,694 A.2d 722 (R.I. 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 CONFLICT OF INTEREST
It is a well-established principle that a fair trial in a fair tribunal is a basic requirement of due process. In ReMurchison, 349 U.S. 233, 236, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955). This requirement is as applicable to administrative agencies as it is to the court. Davis v. Wood, 427 A.2d 332
(1981) (citing Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)); La Petite Auberge, Inc. v. Rhode IslandCommission For Human Rights, R.I., 419 A.2d 274 (1980)).
The appellant argues that his due process rights were violated because he received ineffective notice. The appellant contends that based upon a conversation he had with Whalen on September 9, he was led to believe that Whalen was going to contact the Brouillards about a possible settlement and then call the appellant back. Further, the appellant claims that he believed that the September 17 hearing was cancelled because Whalen never called him back. The appellant further contends that the eye procedure he underwent in June and which rendered him homebound until October excused him from attending the September 17 hearing.
However, even if the appellant did misunderstand Whalen's intentions, the appellant could have requested a continuance of the September 17 hearing, notice of which was mailed to the appellant. R.I. Code R. 01 030 001 (Rule 1.4.1). Moreover, the record reflects that during the time in which the appellant was "homebound," he requested and obtained several continuances from the Board. Therefore, even if the appellant could not attend the September 17 hearing, he could have requested a continuance. Consequently, the appellant's claim of ineffective notice is without merit.
The appellant also argues that Ladouceur's conflict of interest tainted the hearing process. Although a hearing officer may participate in a proceeding to the extent necessary to ensure an orderly and expeditious hearing, he or she "must be impartial and must not attempt to establish proof to support the positionof any party to the controversy." Davis, R.I., 427 A.2d 332, 337 (1981). (Emphasis added.)
In the instant matter, the Brouillards filed a complaint with the Board on February 22, 1996. On or about May 7, 1996, Stormtite examined the vinyl siding installed at the Brouillards' home and submitted an estimate of the cost to repair and complete the defective siding work. Moreover, Ladouceur signed the estimate as Stormtite's President. The record reflects that Stormtite looked at the Brouillards' home, assessed the damage and estimated the cost to repair the defective work on or about May 7, 1996, months after the Brouillards had filed their complaint with the Board on February 22, 1996. Therefore, this Court finds that the appellant's due process rights were violated when, months after the Brouillards had filed a complaint against the appellant, and months after the Board had begun its investigation of the Brouillards' claim, Ladouceur became involved in the case by preparing an estimate for the Brouillards to use as evidence in support of their claim against the appellant. Davis, 427 A.2d 332, 337. ("one who has buried himself in one side of an issue is disabled from later judging that issue in a dispassionate manner").
Additionally, Ladouceur sat with the other Board members throughout the entire November 14, 1996 hearing and made several comments during the hearing regarding the Brouillard's contract with the appellant. The record contains further evidence that the Board accepted the Stormtite estimate as evidence and relied on the estimate as a basis for one-half of its award of damages to the Brouillards. The Board accepted the estimate as evidence with full knowledge that Ladouceur had signed the estimate as the president of Stormtite. Finally, even after Ladouceur "recused" himself at the end of the hearing, he continued to remain with the Board during its deliberation and decision of the appeal. Because of Ladouceur's interest in Stormtite, his signature on the estimate submitted into evidence, and his presence during both the hearing and the Board's deliberation process, the decision of the Board substantially violated the appellant's due process rights.
 CONCLUSION
After a review of the entire record, this Court finds that the Contractor's Registration Board's decision substantially prejudiced the appellant's constitutional rights to due process. This Court does not reach the other issues raised by the appellant. Accordingly, this matter is remanded to the Board for a new hearing.
Counsel shall prepare the appropriate order for entry.
[1] G.L. § 36-14-6. Statement of conflict of interest states inpertinent part: "Any person subject to this code of ethics who,in the discharge of his or her official duties, is or may berequired to take an action, make a decision, or refrain therefromthat will or can reasonably be expected to directly result in aneconomic benefit to the person, or spouse . . . shall, beforetaking any such action or refraining therefrom: (1) Prepare awritten statement . . ."
[2] The Ethics Advisory Opinion states ". . . the Members ofthe Board may not participate in any matter in which they have aninterest, financial or otherwise, which is in substantialconflict with the proper discharge of their duties in the publicinterest . . . . Substantial conflict is defined as a directmonetary gain' or direct monetary loss . . .'" (Emphasisadded.)
[3] Section G.L. § 36-15-5 states in pertinent part "No personsubject to this code of ethics shall have any interest, financialor otherwise, direct or indirect, or engage in any business,employment, transaction, or professional activity, or incur anyobligation of any nature, which is in substantial conflict withthe proper discharge of his or her duties or employment in thepublic interest . . ." The Board is subject to the Code of Ethicspursuant to G.L. § 36-14-4 (c).