RICHARD L. TROLSON, APPELLANT, V. BOARD OF EDUCATION OF
THE SCHOOL DISTRICT OF BLAIR, COUNTY OF WASHINGTON, A
POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.
424 N.W.2d 881

Filed June 24, 1988.   No. 86-668.

Scott J. Norby, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Gregory P. Drew for appellee.

BOSLAUGH, WHITE, CAPORALE, and GRANT, JJ., and NORTON, D.J.

CAPORALE, J.

Plaintiff in error, Richard L. Trolson, appeals from the judgment of the district court affirming the decision of the defendant in error, the Board of Education of the School District of Blair, to amend Trolson's teaching contract from full time to half time as the result of a reduction in force. Trolson assigns as error, among others, to the district court, its finding

that the board's decision is supported by the evidence. That assignment being meritorious, we, without reaching the other claims of error, reverse the judgment of the district court and remand with direction.

Neb. Rev. Stat. §§ 79-12,107 and 79-12,112 (Reissue 1987) require that the contract of a "permanent certificated" teacher be deemed continuing and be renewed and remain in full force and effect unless amended or terminated in accordance with certain statutory procedures. Section 79-12,112 permits the amendment of such a teacher's contract for a variety of reasons, including "reduction in force as set forth in sections 79-1254.05 to 79-1254.08." Neb. Rev. Stat. § 79-1254.05 (Reissue 1987) requires that every board of education adopt a reduction in force policy, and further provides that no such policy "shall allow the reduction of a permanent or tenured employee while a probationary employee is retained to render a service which such permanent employee is qualified by reason of certification and endorsement to perform . . . ."

Neb. Rev. Stat. § 79-1254.02 (Reissue 1987) provides that upon request, a teacher who has been notified of an impending contract amendment as the result of a reduction in force shall be entitled to a hearing. Neb. Rev. Stat. § 79-12,115 (Reissue 1987) specifies the procedure to be used at the hearing, and provides: "(3) A majority of the members of the school board shall render its decision to amend . . . a certificated employee's contract, based solely upon the evidence produced at the hearing . . . ."

Additionally, Neb. Rev. Stat. § 79-1254.06 (Reissue 1987) provides that before a reduction in force shall occur, the board must "present competent evidence demonstrating that a change in circumstances has occurred necessitating" a reduction. Moreover, any "alleged change in circumstances must be specifically related to the teacher" to be affected as the result of the reduction in force, and the board, "based upon evidence produced at the hearing required by sections 79-12,107 to 79-12,121, shall be required to specifically find that there are no other vacancies on the staff for which the employee to be reduced is qualified by endorsement or professional training to perform."

Thus, the Legislature has attenuated a school board's

discretion to pare its staff in the face of reduced needs and has imposed specified procedures for achieving a reduction in force.

Because this is a proceeding in error, the task of this court is, as was that of the district court, to determine whether the board "acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision." *Nuzum v. Board of Ed. of Sch. Dist. of Arnold*, 227 Neb. 387, 394, 417 N.W.2d 779, 784 (1988); *Niedbalski v. Board of Ed. of Sch. Dist. No. 24*, 227 Neb. 516, 418 N.W.2d 565 (1988). We have said that the evidence is sufficient as a matter of law if the board could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Nuzum v. Board of Ed. of Sch. Dist. of Arnold, supra*; *Eshom v. Board of Ed. of Sch. Dist. No. 54*, 219 Neb. 467, 364 N.W.2d 7 (1985). See, also, *Stone v. City of Omaha, ante* p. 10, 424 N.W.2d 617 (1988).

The record shows that Trolson was certified to teach kindergarten through 12th grade, and was "endorsed" as being qualified to teach art only. Trolson had been with the school district for 10 years as a full-time art teacher and was thus employed by the board for the 1985-86 contract year. Trolson also coached eighth grade girls' basketball.

On March 21, 1986, Trolson received a letter from the secretary of the board notifying him that his teaching contract "may be amended from 1.0 to .5 full time equivalency at the end of the 1985-86 school year, the reason being a change in circumstances that necessitate [sic] a reduction in force in the secondary Art Department." By letter dated March 27, 1986, Trolson made a request to school superintendent Gerald L. Otte for a hearing before the board and made certain other requests which, in view of the disposition we reach, are not relevant.

By letter dated April 2, 1986, Superintendent Otte responded that a hearing would be held on April 8, 1986. He further wrote that "[i]t is not our intent nor do we desire to conduct this hearing based on your professional performance. The decision to reduce your position from 1.0 to .5 full time equivalency is based on the following reasons: class size, length of service, and contribution to the activities program."

At the hearing, there was testimony that the enrollment in art courses had suffered a steady decline despite the increase in the number of students. Introduced into evidence was a letter written by Superintendent Otte to Patricia Shafer, one of Trolson's representatives, which set forth the following regarding student enrollment in art classes:

The major reason for this action is a decline in enrollment in the Blair Jr.-Sr. High Art Department. The information below is taken from the Secondary Annual Report to the North Central Association of Colleges and Schools and illustrates the reduction in Art enrollment.

| Year | Total School Enrollment for Grades 7-12 | Total Number of Students in the 7-12 Art Program | Total Sections Offered | F.T.E. |
|---|---|---|---|---|
| 1973-74 | 948 | 186 | 38 | 1.5 |
| 1980-81 | 856 | 217 | 55 | 2.0 |
| 1981-82 | 842 | 190 | 54 | 2.0 |
| 1982-83 | 817 | 202 | 48 | 2.0 |
| 1983-84 | 853 | 164 | 48 | 2.0 |
| 1984-85 | 874 | 171 | 43 | 2.0 |
| 1985-86 | 877 | 137 | 38 | 2.0 |
| *1986-87 | 900 | 149 | 34 | |

*The 1986-87 figure is not from the North Central report but is based on student enrollments for next year and total number of students projected (900).

Superintendent Otte also testified that it might be necessary in the future for some art courses to be taught by teachers in other departments, some of whom might have less seniority than Trolson.

The record reveals that "F.T.E." means full-time equivalency but fails to state how that equivalency is computed nor what it measures. Neither does the record tell us why it would require the time of only one and one-half teachers to instruct 38 sections containing 186 students during the 1973-74 school year but require the full time of two teachers to instruct the same number of sections containing only 137 students during the 1985-86 school year.

Superintendent Otte's letter to Shafer further advised:

In regard to length of service, of the two 7-12 Art teachers, Mr. Trolson will have ten years of service at the end of the current year and Mr. VanCleave will have been with the district as Art teacher for twelve years.

Also, both teachers have secondary coaching assignments. However, Mr. Trolson coaches 8th grade Girls Basketball and Mr. Vancleave coaches both Varsity boys football and Varsity Boys track.

The evidence at the hearing developed that there were two other art teachers in the system. While Superintendent Otte did not formally compare Trolson's qualifications with those of the other two teachers, he did testify that the first of these, who teaches art in grades 4 through 6, had 16 years' experience; and the second, who teaches kindergarten through grade 6, had a total, not including interruptions, of 12 years' experience. In addition, she holds a master's degree, is on the "Commissioner's State Advisory for [the] Gifted," serves on the local committee for the gifted, had taught summer courses, and is endorsed as being qualified to teach two subjects.

Trolson himself testified he was aware of no vacancies on the staff which he was qualified to perform and that there were no positions filled by probationary employees which he was qualified to perform.

At the conclusion of the evidence the board unanimously voted to amend Trolson's contract to .5 full-time equivalency for the following stated reasons:

That the actual enrollment of the 7-12 Art Program has declined significantly in the five years since 1980-81.

That there are no other vacancies on the staff for which Richard Trolson is qualified by endorsement or professional training to perform.

That no probationary employee is retained to render a service for which Richard Trolson is qualified by reason of certification and endorsement to perform or where certification is not applicable by reason of college credits in the teaching area.

Whether there is sufficient evidence to support the board's decision depends upon whether, as required by §§ 79-1254.06 and 79-12,115, the evidence produced at the hearing establishes

(1) a change in circumstances necessitating a reduction in force, (2) that the change in circumstances specifically relates to the teacher to be affected, in this case Trolson, and (3) that there are no vacancies on the staff for which the teacher to be affected is qualified. *Van Fossen v. Board of Governors*, 228 Neb. 579, 423 N.W.2d 458 (1988).

Trolson argues it does not, because even if the evidence produced at the hearing establishes the requisite change in circumstances and the lack of vacancies for which he is qualified, the board did not introduce its reduction in force policy in evidence, without which it cannot be determined that the change in circumstances specifically relates to him. That is, it cannot be determined whether the selection was to be made on the basis of seniority, participation in other activities, a combination of those considerations, or on some other undisclosed basis. Neither can it be determined how seniority is to be computed; that is, whether interrupted service is to be counted the same as continuous service.

We must conclude that Trolson is correct, for even if we assume the policy could be proved in some fashion other than the simple method of identifying it as an exhibit and placing it in evidence, a matter we need not and do not decide, the fact remains that no one articulated its contents. The record tells us only the factors considered in selecting Trolson's contract as the one to be amended; there is nothing to show that the factors were used in accordance with whatever the policy may be. Thus, the evidence does not meet the requirement that the evidence produced at the hearing establish that, among other things, the change in circumstances necessitating a reduction in force specifically relate to Trolson.

Accordingly, the judgment of the district court is reversed and the cause remanded with the direction that the district court vacate the decision of the board.

REVERSED AND REMANDED WITH DIRECTION.