PAMELA NICKEL, APPELLANT, V. SALINE COUNTY SCHOOL
DISTRICT NO. 163, ALSO KNOWN AS WESTERN PUBLIC SCHOOL,
A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLEE.
559 N.W.2d 480

Filed February 14, 1997.    No. S-95-027.

Scott J. Norby, of McGuire and Norby, for appellant.

Neal E. Stenberg, of Harding & Ogborn, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LIKES, D.J.

WHITE, C.J.

Pamela Nickel appeals the decision of the Saline County School District No. 163 Board of Education canceling Nickel's teaching contract due to a reduction in force. We affirm.

Nickel was a permanent certificated teacher employed by the school district during the 1993-94 school year. On March 31, 1994, Nickel received notice that her "employment contract may be terminated after the close of this contract year because of reduction in force. It appears that, based on the criteria of the reduction in force policy, you would be affected by a reduction in the staff." The parties agree that declining student enrollment and the expense of complying with the Americans with Disabilities Act necessitated a reduction in force.

The district's reduction in force policy provides that "no permanent employee may be terminated through a [reduction in force] while a probationary employee is retained to perform a service that the permanent employee is qualified by certification and endorsement to perform or where certification is not applicable, by reason of college credits in the teaching area." The policy requires that selection of personnel for termination be based on eight criteria: (1) programs to be offered, (2) areas of certification and endorsement, (3) state and federal regulations mandating certain employment practices, (4) special qualifications that may require specific training and/or experience, (5)

contributions to activity programs, (6) qualifications based on employee evaluation procedures, (7) the impact created by multiple part-time certificated employees, and (8) any other reasons which can be rationally related to the instruction in or administration of the school system. The policy does not indicate how these eight criteria are to be weighed. However, the policy does specifically state that in the event that no significant difference exists between certificated employees after weighing these eight factors, then the employee with the longest period of uninterrupted service to the district must be retained.

Nickel requested a hearing before the board, and this hearing was held on April 26, 1994. At the hearing, board member Lori Miller testified as to each of the district's employees in relation to the eight criteria. Miller noted that each of the six certificated employees held an endorsement qualifying them to teach kindergarten through eighth grade in elementary education. Miller also noted that the criteria involving state and federal regulations, employee evaluations, and the impact of multiple part-time employees were not applicable in this instance.

The board made the following findings of fact as to each of the six certificated employees:

10. Henry Orf has a math endorsement and possesses math teaching skills exceeding those of the district's other teachers, none of whom have a math endorsement. Math is a critically important part of the district's curriculum, particularly for grades 7 and 8, which Mr. Orf teaches. Mr. Orf is the teacher best qualified to fulfill the district's math curriculum needs. Mr. Orf has filled the position of head teacher for 10 consecutive years, and because of his substantial experience in that area, he is best qualified to meet the district's need for a head teacher. Mr. Orf also makes a very valuable contribution to the district's extracurricular program by coaching football, basketball, volleyball, track, and softball. . . .

11. Wilma Gearhart is the only teacher employed by the district who has a special education endorsement, and she functions as the district's special education teacher. The district's special education program is a critically important part of the district's curriculum . . . .

12. Doris Broz possesses the special qualifications of education/training in using computers, and she has acquired experience in teaching computer skills to elementary students. None of the district's other teachers have comparable training and teaching experience regarding computers. Mrs. Broz is the district's Chapter I teacher and has several years['] experience in teaching Chapter I. Classes regarding use of computers and Chapter I education services are critically important parts of the district's curriculum . . . .

13. Mari Ann Pesek is involved with the following extracurricular programs: DARE, the lunch program, elder care program, concession sales, and assisting the coach for basketball, track, volleyball, and softball. Mrs. Pesek has a greater involvement with the district's extracurricular programs than any other teacher. The extracurricular programs with which she is involved provide students . . . with very valuable educational and athletic opportunities. . . .

14. Diane Ringler has endorsements in basic business and general office education, however, these more specific subjects do not constitute an integral part of the district's curriculum due to its focus on more general subjects. . . .

15. Pamela Nickel has an endorsement in physical education, however, this area of instruction is not an integral part of the district's curriculum due to the ability of other teachers to adequately cover this subject. . . .

The evidence also demonstrated that Nickel had made significant contributions to district programs in the past, but that she was making none of these contributions in the current school year. Additionally, although Nickel and other teachers had participated in different inservice programs including computer training, these inservice programs were not considered by the board in making its decision.

The board determined that based on the evidence before it, there was no significant difference between Nickel and Ringler in the context of reduction in force. Therefore, the board retained Ringler, in accordance with the reduction in force pol-

icy, because she had the longest period of uninterrupted service to the district.

Nickel timely appealed the board's decision to the district court for Saline County, alleging that the decision was not supported by the weight of the evidence and that the board had retained a probationary certificated employee, Broz, to perform services that Nickel was qualified to perform. The district court affirmed the decision of the board, and Nickel then appealed to the Nebraska Court of Appeals. Pursuant to our power to regulate the caseloads of the appellate courts, we removed this case to our docket.

On appeal, Nickel alleges several assignments of error. As summarized, Nickel asserts that the district court erred in failing to find that (1) the district violated the requirements of the Nebraska reduction in force statutes and its own policies in terminating the contract of a permanent employee while a probationary employee was retained to perform a service which the permanent employee was qualified to perform and (2) the district employed unlawful procedures and reached a decision that was not supported by the evidence contained in the record.

The standard of review in a proceeding in error from an order of a school board terminating the contract of a tenured teacher is whether the school board acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision. *Boss v. Fillmore Cty. Sch. Dist. No. 19, ante* p. 669, 559 N.W.2d 448 (1997); *Drain v. Board of Ed. of Frontier Cty.*, 244 Neb. 551, 508 N.W.2d 255 (1993); *Trolson v. Board of Ed. of Sch. Dist. of Blair*, 229 Neb. 37, 424 N.W.2d 881 (1988). The evidence is sufficient as a matter of law if the school board could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Boss, supra; Drain, supra; Trolson, supra.*

We note at the outset that a school district is a creature of statute and possesses no other powers than those granted it by the Legislature. *Rauert v. School Dist. 1-R of Hall Cty., ante* p. 135, 555 N.W.2d 763 (1996); *School Dist. of Waterloo v. Hutchinson*, 244 Neb. 665, 508 N.W.2d 832 (1993). The Legislature has attenuated a school board's discretion to pare its staff in the face of reduced needs and has imposed specified

procedures for achieving a reduction in force. See, Neb. Rev. Stat. §§ 79-1254.02 to 79-1254.08 and 79-12,107 to 79-12,121 (Reissue 1994); *Trolson, supra.* Before the board may terminate a teacher's employment because of a reduction in force, it must establish via proof at the hearing (1) a change in circumstances necessitating a reduction in force, (2) that the change in circumstances specifically relates to the teacher to be affected, and (3) that there are no vacancies in the staff for which the teacher to be affected is qualified. § 79-1254.06; *Van Fossen v. Board of Governors*, 228 Neb. 579, 423 N.W.2d 458 (1988).

Here, the parties agree that a change in circumstances has occurred in that the district was experiencing annually decreasing enrollment and faced the additional costs of complying with the mandates of the Americans with Disabilities Act. This change in circumstances necessitated the reduction in force of one of the six teachers employed by the district, and there were no vacancies in the teaching staff. Thus, the issue before this court is not whether a reduction in force was necessary, but, rather, whether Nickel was the teacher properly affected.

Nickel's first assignment of error alleges that the district violated the requirements of the Nebraska reduction in force statutes and its own policies in terminating the contract of a permanent employee while a probationary employee was retained to perform a service which the permanent employee was qualified to perform. Specifically, Nickel argues that Doris Broz was a probationary teacher at the time Nickel's contract was terminated and was wrongly retained because Nickel was qualified to perform the services Broz performed. We disagree.

Nickel is correct insofar as she alleges that if the contracts of a tenured teacher and a probationary teacher are subject to termination due to a surplus of staff, the tenured teacher must be retained so long as he or she has the required certification in the area. See, § 79-1254.05; *Moser v. Board of Education*, 204 Neb. 561, 283 N.W.2d 391 (1979). Nebraska statutes define a probationary teacher as "a teacher . . . who has served under a contract with the school district for less than three successive school years . . . ." § 79-12,107(3).

Probationary certificated employees achieve permanent certificated, or tenured, status based on a statutory formula. The

applicable statute states in part that "[f]or certificated employees employed one-half time or more but less than four-fifths time, each such year of employment shall be credited against the three-year requirement for acquiring permanent certificated employee status in an amount proportionate to the term of such employment for each year." § 79-12,108(1)(b). This formula was amended in 1991 because prior to that amendment, part-time teachers who worked exactly one-half time or less could not accumulate credit toward permanent certificated status. See § 79-12,108(1)(b) (Reissue 1987).

In the instant case, Broz held a one-half-time contract as a kindergarten teacher for 11 years prior to the reduction in force hearing. Commencing in the 1992-93 school year, Broz obtained another one-half-time contract to teach computer skills and "Chapter I," and held this second contract again in the 1993-94 school year.

Nickel correctly argues that Broz had accumulated no years of service toward permanent status under the pre-1991 version of § 79-12,108(1)(b) because Broz held only one one-half-time contract with the district. Nickel also argues that the 1991 amended version of § 79-12,108(1)(b) does not allow any of the years Broz was employed by the district prior to the 1991 amendment to count toward her permanent certificated status, and that the only years of service which could accumulate under the 1991 statute were those performed following its passage. Nickel thus reasons that under the 1991 version, Broz had accumulated only 2½ years toward the 3-year requirement for permanent status because she had a one-half-time contract in 1991 and two one-half-time contracts in 1992 and 1993. According to Nickel, Broz was thus still a probationary employee at the time of the 1994 hearing. We disagree with Nickel's interpretation of the 1991 version of § 79-12,108(1)(b).

In construing a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Rauert v. School Dist. 1-R of Hall Cty., ante* p. 135, 555 N.W.2d 763 (1996); *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996). In so doing, we must look to the statute's purpose and give the

statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996).

Here, the 1991 version of § 79-12,108(1)(b) does not specifically state that it has a retroactive effect. However, the statute also does not contain specific language limiting its application to years of service accumulated after its passage, nor does it prohibit the use of pre-1991 years of service in determining permanent status. The legislative history of the statute states that its purpose was to make eligible for permanent status educators teaching only one-half time.

We dealt with a similar issue in *Wang v. Board of Education*, 199 Neb. 564, 260 N.W.2d 475 (1977). In *Wang*, we found that while the statute then in effect for determining tenure did not specifically state that it was retroactive, the statute still allowed for the use of pre-effective-date service to determine permanent status. We stated:

It seems clear to us that . . . the effect of the amendment . . . was that those employed on the effective date of the act, who had served at least 2 years prior to the effective date of the act, would escape the probationary period language of the act and thus not be placed in jeopardy. The inference is clear that the protection offered by the act, requiring a finding of just cause prior to any dismissal, was not intended by the Legislature to be available to those who had not yet, as of the effective date of the act's passage, been employed for 2 years.

*Wang*, 199 Neb. at 569, 260 N.W.2d at 478-79.

We find this reasoning persuasive in the instant case. We will not impose on the clear language of the 1991 version of § 79-12,108(1)(b) a limitation to its application not contained therein, nor will we interpret the statute so as to defeat its purpose. We therefore determine that § 79-12,108(1)(b) allows Broz' pre-1991 service to be counted toward her permanent status. Under the statutory formula, Broz attained permanent status with the passage of the statute in 1991 because she had already worked for at least 6 years at one-half time so as to attain the 3 full years of service required for permanent status.

Therefore, we find Nickel's first assignment of error to be without merit.

Nickel next alleges that even if we find that Broz was a permanent certificated employee, the district employed unlawful procedures in reaching its decision, and that the district's decision was not supported by the evidence contained in the record. We disagree.

Nickel first argues that the district improperly selected or targeted Nickel's contract for termination without considering other teachers in the district. She bases this argument on the fact that she received notice indicating that she would be affected by a reduction in the district's staff, and she interprets this notice as evidence that the board had reached a final decision that her contract should be terminated prior to the hearing. Specifically, the notice stated, "I am writing to inform you that your employment contract *may be terminated* after the close of this contract year because of reduction in force. *It appears that*, based on the criteria of the reduction in force policy, you would be affected by a reduction in the staff." (Emphasis supplied.)

Nebraska statutes require notice and a hearing for any teacher whose contract may be canceled due to a reduction in force. §§ 79-1254.06 and 79-12,107 to 79-12,121. As well, we have held that the mere fact that selected teachers received letters indicating that their contracts might be terminated due to a reduction in force was not sufficient evidence to find that a final decision had been reached prior to the reduction in force hearing to terminate their employment contracts. See, *Heithoff v. Nebraska State Bd. of Ed.*, 230 Neb. 209, 430 N.W.2d 681 (1988); *Van Fossen v. Board of Governors*, 228 Neb. 579, 423 N.W.2d 458 (1988).

Here, Nickel received her statutorily required notification indicating that her contract could be terminated due to a reduction in force. The language of the notice clearly demonstrates that no final decision had been reached in this matter, but that Nickel's contract *might* be terminated. There is no indication in the notice or in the record of this case that the board had reached a final decision as to Nickel's status prior to the hearing. We, therefore, hold that Nickel received appropriate notifi-

cation and that the district did not utilize unlawful procedures in so notifying Nickel.

Nickel also alleges that the board's decision was not supported by the evidence because the board considered only current contributions and refused to consider historical contributions to the district. Nickel argues that had the board considered historical contributions, her record of service would have included years as head teacher and coach for sports activities, as well as her involvement in a variety of other programs and activities.

We have held that a school board has broad discretion in determining what factors to include in its reduction in force policy as well as how to weight those factors. See *Dykeman v. Board of Education*, 210 Neb. 596, 316 N.W.2d 69 (1982). Our review of the board's decision in this case is limited to a determination of whether the board acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision. *Boss v. Fillmore Cty. Sch. Dist. No. 19, ante* p. 669, 559 N.W.2d 448 (1997); *Trolson v. Board of Ed. of Sch. Dist. of Blair*, 229 Neb. 37, 424 N.W.2d 881 (1988).

Clearly, the board acted within its statutorily authorized jurisdiction to effectuate a reduction in force. See § 79-1254.06. The board's policy does not specifically provide the manner in which the eight criteria are to be weighed, but board member Miller testified that the special education endorsement of teacher Wilma Gearhart was of the most importance in ranking the criteria and that contributions to activities were also very important to the board. While it is true that the board could have chosen to include historical contributions in its consideration of which staff member's contract to terminate, the record is clear that the board chose to consider only current contributions by teachers, that the board did not consider any teacher's historical contributions, and that the board's reduction in force policy did not state whether historical or current contributions were to be considered. The board exercised its discretion in applying its policy, and it did so evenhandedly. The board apparently decided that its reduction in force decision should be based only on what each staff member was currently contributing to the

educational program and not on what they may have contributed in the past.

Nickel argues that if the board is permitted to consider only current contributions, the board could simply shuffle assignments so as to impermissibly target a teacher for reduction in force. While it is conceivable that a school board could do as Nickel suggests, it is quite clear that the board did not do so and could not have done so in this situation. Head teacher Henry Orf testified that he did not assign duties to teachers, but instead asked for volunteers among the staff members. That Nickel did not choose to volunteer for more duties of this nature during the 1993-94 school year is certainly unfortunate, but that does not invalidate the board's decision in this case.

Nickel also argues that the board improperly failed to consider Nickel's inservice hours, which included computer training, in deciding to retain Broz due to her experience teaching computer keyboarding. Again, the board could have chosen to consider this as a factor but did not do so in its evaluation of any teacher. That the board determined that Broz' current experience in teaching computers was more valuable to the district than Nickel's inservice training and dearth of teaching experience is not a basis upon which we can invalidate the board's decision in this case.

We cannot say that the evidence was insufficient as a matter of law to support the board's determination. Based on the testimony and exhibits before the board, it could reasonably find that Nickel was the teacher properly affected by the reduction in force. Thus, we find that Nickel's second assignment of error is also without merit.

Because we hold that the district did not retain a probationary certificated teacher while terminating a permanent certificated teacher and did not utilize unlawful procedures or make its reduction in force decision based on insufficient evidence, we affirm the decision of Saline County School District No. 163 and the district court for Saline County.

AFFIRMED.