REQUESTED BY: State Foster Care Review Board
You have requested our opinion as to whether Neb. Rev. Stat. § 43-1303(6) allows the State Foster Care Review Board ("Board") to conduct visits and inspections of foster care group homes. Specifically, the Board is seeking access to the OMNI group home facilities ("OMNI"). According to your letter, OMNI has contracted with the Department of Health and Human Services ("Department") to provide a therapeutic environment for a number of foster care children. Recently, the Board has received a number of allegations that OMNI has provided improper care for many of the youth in their homes. The Board wishes to tour OMNI's facilities to see if the allegations are true and to ensure that the needs of the children in OMNI's care are being met. OMNI has refused to allow the Board to tour any of OMNI's facilities and has stated that the Board must schedule in advance any visit the Board wishes to make.
We conclude that § 43-1303 does give the Board the authority to conduct visits and inspections of these group homes, and that any group homes must allow such inspections. We also conclude that the Board may conduct such visits and inspections unannounced.
You also ask how the Board should proceed to enforce its authority under this statute. We conclude that the proper method of enforcement is to request that the Department initiate a license suspension or revocation of any group home that does not comply with § 43-1303.
 DISCUSSION
The Board was created in 1982 by the passage of LB 714, the Foster Care Review Act. The purpose of the Act was to provide for periodic review of "cases of children who have resided in public or private foster care for a period of more than six months to determine what efforts have been made by the supervising agency or child-caring institution to carry out the plan for rehabilitation or permanent placement." Introducer's Statementof Intent on LB 714, 87th Neb. Leg., 2nd Sess. (January 19, 1982). As stated by this office in a previous opinion, the goals of the Act were to correct two problems. First, a number of foster care children were being "lost in the system". Second, there were concerns that neither the social service agency nor the courts were adequately monitoring the progress of children placed in foster care. See Op. Att'y Gen. No. 93-084 (October 18, 1993). In essence, the Board was set up as an independent reviewer of the system.
Neb. Rev. Stat. § 43-1303 (Cum. Supp. 1996) sets out various duties and responsibilities of the Board. These include gathering data and making reports on children in foster care, reviewing the activities of local review boards, keeping a statewide register of all children in foster care, establishing training and procedures for local review boards, evaluating judicial and administrative data on foster care, and making reports and recommendations to the Department and to each court having the authority to make foster care placements.
In conjunction with their duties, § 43-1303 states that, "[t]he state board may visit and observe foster care facilities in order to ascertain whether the individual physical, psychological, and sociological needs of each foster child are being met."[1] No other statutes or regulations address this specific statutory provision.
Nebraska Law states that in construing a statute, a court must determine and give effect to the purpose and intent of the legislature as ascertained from the entire language of the statute considered in its plain, ordinary and popular sense.Nickel v. Saline County School Dist. No. 163, 251 Neb. 762,559 N.W.2d 480 (1997). A court must look to the statutory objective to be accomplished, the evils and mischiefs sought to be remedied, and the purpose to be served, and then must place on the statute a reasonable or liberal construction that best achieves the statute's purpose, rather than construction that defeats it. Southeast Rural Volunteer Fire Dept. v. Departmentof Revenue, 251 Neb. 436 (1997). When the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged in to ascertain their meaning. Estate ofMuchemore, 252 Neb. 119, 560 N.W.2d 477 (1997). It is not within the province of a court to read a meaning into a statute which is not there, or to read anything direct and plain out of a statute.Village of Winside v. Jackson, 250 Neb. 851, 553 N.W.2d 476
(1996).
In reading this language in its plain and ordinary meaning, we believe that no other conclusion can be reached but that the Board is allowed to visit and observe foster care facilities to ensure the needs of the children at those facilities are being met. OMNI's position appears to be that § 43-1303 does not require OMNI to allow such visits and inspections by the Board. However, such an interpretation would read into the statute a requirement that is not there — that the Board may visit and inspect only with the permission of the foster care facility.
Such an interpretation would defeat the purpose of the statute, which is to enable the Board to make an independent determination as to whether the children are receiving the proper care. Thus, OMNI and other group homes are required under this statute to allow visits and inspections by the Foster Care Review Board.
Implicit in this opinion request is also the question as to whether such visits must be announced. Again, we look to the plain, ordinary meaning of the statutory language, as well as to the objectives to be achieved by the statute. First, there is no requirement in the statutory language itself that the visits be announced. Second, the purpose of the visits is to allow the Board to determine if foster care children are receiving proper care. If all visits must be announced in advance, then any facility which was not providing foster care might be able to hide those problems temporarily, thus defeating the purpose of the visit. Of course, some problems, particularly long-term problems, may not be so easy to disguise. However, it is important for the Board to be able to see any problems which may exist so that it may make complete, accurate, and correct reports to all social services agencies and to each court dealing with the placement of children. Thus, § 43-1303 allows the Board to conduct both announced and unannounced visits.
The Board next asks what action it can take in order to gain access to OMNI's facilities. We believe that the best course of action would be to report OMNI's refusal to allow the inspections to OMNI's licensing agent and to request that an action to suspend or revoke OMNI's license be initiated unless it agrees to allow the inspections.
Neb. Rev. Stat. § 71-1902 states:
 Except as otherwise provided in this section, no person shall furnish or offer to furnish foster care for two or more children from different families without having in full force and effect a written license issued by the department upon such terms and conditions as may be prescribed by general rules and regulations adopted and promulgated by the department.
Neb. Rev. Stat. § 71-1904 states in part:
 The department shall adopt and promulgate rules and regulations pursuant to sections 71-1901 to 71-1906.02 for (1) the proper care and protection of children by licensees under such sections, (2) the issuance, suspension, and revocation of licenses to provide foster care . . . .
The regulations promulgated by the Department pursuant to these statutes are located in 474 NAC Chapter 6. 474 NAC 6-003
contains provisions related to foster care home licensure.474 NAC 6-005 relates to licensing group homes and child caring and child placing agencies. Since OMNI is a group home, it is subject to the requirements of § 6-005.
474 NAC 6-005.03 states:
 Persons, other than a parent, who place, assist in placing, advertise a child for placement, or give the care and custody of any child to any person or association for adoption or otherwise, except for temporary or casual care, must obtain a license to place children. See also 474 NAC 6-003.03.
474 NAC 6-003.03 states:
 A license is required when the business is exercising the care, supervision, custody or control over children, age 15 or younger, from more than one family, for compensation or hire. This care must be in lieu of the care or supervision normally exercised by parents in their own home.
 To provide day care for children in a foster home, the provider shall obtain a separate day care center license or day care home registration.
 Each applicant/licensee shall comply with all applicable federal, state, and local subdivision laws, ordinances, and regulations.
As a group home, OMNI falls into the requirements of § 6-003.03 and is required to comply with all state laws and regulations. Thus, OMNI would be required to comply with §43-1303, and it would be the obligation of the Department to take the necessary steps to in ensure compliance. The following regulations set out the procedure to be followed by the Department.
Non-Compliance with Requirements is set out in 474 NAC 6-005.13 by reference to 6-003.15 which states: "The licensing agent shall notify the applicant/licensee in writing of any points of non-compliance with licensing requirements."
In the absence of satisfactory corrective measures by the licensee, there is a procedure for denial, revocation, or suspension of a license. See 474 NAC 6-005.18 which refers to 474 NAC 6-003.21 which states: "The decision to deny, revoke or suspend a license is made by Central Office Staff based on documentation and recommendation provided by the licensing agent." Subsections 21A and 21B provide a procedure for revocation and suspension of a license. 21B provides that the licensing agent shall recommend revocation for non-compliance after written notice and 21C provides for suspension that is necessary following a report of neglect or abuse.
It appears from the regulations that the proper course for the Board would be to notify OMNI's licensing agent that OMNI is not complying with one of its license requirements, i.e. allowing the Board to inspect the facilities as mandated by § 43-1303. At that point, the licensing agent is required to recommend suspension or revocation to the Department. The general rule in Nebraska is that the use of the word "shall" is considered mandatory and is inconsistent with the idea of discretion.Shepherd v. Equal Opportunity Commission, 251 Neb. 517,557 N.W.2d 684 (1997). At that point, the Department will need to review the recommendation.
Sincerely,
 DON STENBERG Attorney General
 David R. Tarvin, Jr. Assistant Attorney General
APPROVED BY:
Don Stenberg
Attorney General
[1] The Board cited this language as part of subsection (6) of43-1303. In actuality, the language is not a part of (6) but instead follows (6).