REQUESTED BY: Richard P. Nelson, Director Nebraska Department of Health and Human Services Regulation and Licensure
You have requested our opinion regarding the impact, if any, of the Nebraska environmental audit statutes on the Department's enforcement of the Safe Drinking Water Act. You have explained that § 1413 of the federal Safe Drinking Water Act gives states primary enforcement responsibilities for public water systems during any period the Environmental Protection Agency ("EPA") determines the state has met certain requirements. The EPA enforces the federal regulations when a state is not eligible for primacy. The Nebraska Department of Health and Human Services Regulation and Licensure (the "Department") is in the process of applying for primacy for a recently adopted regulation and the EPA has informed the Department that it needs more information about the effect of Nebraska's environmental audit statutes, Neb. Rev. Stat. §§25-21,254 et seq., on the Department's authority to enforce the Nebraska Safe Drinking Water Act and regulations promulgated under that Act.
You have asked the following three questions:
1. Do the Nebraska environmental audit statutes apply to the Nebraska Safe Drinking Water Act?
2. If these statutes do apply, do they restrict the ability of the Department to enforce provisions under the Nebraska Safe Drinking Water Act or Title 179, Chapter 2 of the Nebraska Administrative Code that require reports or records to be made or kept by public water supply systems?
3. Do these statutes restrict the Department's ability to enforce provisions of the Nebraska Safe Drinking Water Act or Title 179, Chapter 2 of the Nebraska Administrative Code involving minimum contaminant levels or action levels?
The Nebraska Safe Drinking Water Act ("SDWA") is found at Neb. Rev. Stat. §§ 71-5301 through 71-5313 (1996 and Cum. Supp. 2000). The Department has adopted minimum drinking water standards pursuant to the SDWA and regulates public water systems and their operators and owners. The Department is authorized to require monitoring of drinking water supplied to consumers, to regulate the construction and operation of public water supply systems and to enter the premises of public water supply systems to conduct monitoring, make inspections and collect water samples. §§ 71-5305 and 71-5306 (1)(e). The Department may also require owners and operators to maintain records, make reports and provide information the Department needs in order to determine compliance with the SDWA and regulations promulgated pursuant to that Act. §71-5306 (1)(g). In addition, the Department may require public water supply systems to give notice to consumers and the Department of non-compliance. § 71-5304.02.
Several enforcement options are available to the Department. Neb. Rev. Stat. § 71-5303(2) provides that the Department may take disciplinary action against a permit or certification, issue administrative orders scheduling action to be taken, take emergency action as provided in § 71-5304.01, and seek an injunction as necessary to obtain compliance with the SDWA. The Department may also assess an administrative penalty upon violation of the SDWA or implementing regulations. § 71-5304.01(5). Violation of the SDWA may also constitute a Class IV misdemeanor. § 71-5312.
The environmental audit statutes to which you refer are found at Neb. Rev. Stat. §§ 25-21,254 through 25-21,264 (Cum. Supp. 2000). This office has recently discussed the environmental audit statutes in Op. Att'y Gen. No. 01006 in which we examined the narrower question whether the environmental audit laws restrict the ability of the Nebraska Department of Environmental Quality to obtain injunctive relief. We discussed therein the purpose of the environmental audit statutes "to remove the specter that a voluntary environmental self-audit would be used against the business or entity which arranged for it, provided that steps were taken within a reasonable time to rectify problems highlighted by the audit."
The environmental audit statutes provide several incentives for businesses to identify and remedy environmental compliance issues. §25-21,254. One such incentive is that an environmental audit is not admissible as evidence in a civil or administrative proceeding or enforcement proceeding. Neb. Rev. Stat. § 25-21,256. However, there are several important exceptions to this protection which are outlined in §§ 25-21,258 and 25-21,259. The environmental audit statutes also provide that a person performing a voluntary self-evaluation may disclose a possible violation to the appropriate regulatory agency and may then be immune to civil penalties if the requirements of § 25-21,261 are met. Those requirements include making timely disclosure and taking appropriate corrective action.
We will now address your three specific questions.
1. Do the Nebraska environmental audit statutes apply to the Nebraska Safe Drinking Water Act?
We must first look at the definitional section of the environmental audit statutes at § 25-21,255. An "environmental audit" is there defined to mean a document prepared "pursuant to a specific written directive to review compliance with an environmental requirement or requirements,. . . ." An "environmental requirement" is defined to mean an environmental protection requirement contained in the specific acts enumerated within § 25-21,255(2)(a) "or federal law, or a rule or regulation adopted and promulgated pursuant to such acts, sections, or laws . . ." The Nebraska Safe Drinking Water Act is not specifically included in that list. However, as the definition includes those environmental protection requirements contained in federal law or rules or regulations adopted and promulgated pursuant to federal law, we must give this language some consideration.
We also note that, by definition, an environmental audit is "prepared as a result of a voluntary self-evaluation that is done in good faith . . ." § 25-21,255 (1). The term "voluntary self-evaluation" is also defined within the environmental audit statutes as "a self-initiated assessment, audit, or review, not otherwise expressly required by environmental requirements. . . ." § 25-21,255 (4). To the extent environmental audit statutes have any applicability to the state SDWA, it is only those voluntary self-evaluations which are afforded protection by the environmental audit statutes. We will discuss this aspect further in answer to your second question.
We have reviewed the legislative history of the environmental audit statutes (Laws 1998, L.B. 395), but it was not of assistance in determining which federal laws are referred to in § 25-21,254(2). Furthermore, we must determine and give effect to the Legislature's purpose and intent as ascertained from the entire language of the statute in its plain and ordinary meaning. Nickel v. Saline County School Dist.No. 163, 251 Neb. 762, 559 N.W.2d 4480 (1997). Resort to the legislative history of the statutes is not required when the statutory text is plain, direct, and unambiguous. Metropolitan Util. Dist. Of Omaha v.Balka, 252 Neb. 172, 560 N.W.2d 477 (1997). We must assume that the reference to federal laws and regulations includes all federal laws and regulations containing environmental protection requirements.
2. If these statutes do apply, do they restrict the ability of the Department to enforce provisions under the Nebraska Safe Drinking Water Act or Title 179, Chapter 2 of the Nebraska Administrative Code that require reports or records to be made or kept by public water supply systems?
It is our view that the environmental audit statutes would not restrict the ability of the Department to require reports or records to be made or kept by public water supply systems. As previously stated, an environmental audit which is afforded protection under the environmental audit statutes is one prepared as a self-initiated assessment or reviewnot otherwise expressly required by environmental requirements. Furthermore, § 25-21,258 provides that the protections created for environmental audit documents do not apply to documents or information required to be developed, maintained, or reported pursuant to any environmental requirements or to documents or other information required to be available or furnished to regulatory agencies pursuant to any environmental requirements or any other law. Therefore, the reports or records required to be made or kept by the state Safe Drinking Water Act or implementing regulations would be afforded no protection under the environmental audit statutes.
3. Do these statutes restrict the Department's ability to enforce provisions of the Nebraska Safe Drinking Water Act or Title 179, Chapter 2 of the Nebraska Administrative Code involving minimum contaminant levels or action levels?
No. Pursuant to § 25-21,259(1)(c) an environmental audit is admissible as evidence if a court determines that the information contained in the environmental audit shows water contamination. In addition, as we stated in Op. Att'y Gen. No. 01006, which was prepared for the Nebraska Department of Environmental Quality:
 Your first question is whether Neb. Rev. Stat. § 25-21,261(1) (Cum. Supp. 2000), restricts NDEQ's ability to obtain immediate and complete injunctive relief. You give the example of a facility which discloses that it has been operating without a permit, where such permit was required prior to commencing operations. You wonder whether, assuming the facility submitted a complete permit application within a reasonable time, the section would prevent NDEQ from obtaining an injunction to prohibit further operations until a permit was obtained. You point to Neb. Rev. Stat. § 25-21,262 (Cum. Supp. 2000), which provides that, [e]xcept as specifically provided in §§ 25-21,254 to 25-261, such sections do not affect the regulatory authority that any department or agency has to require any action associated with the information disclosed.
Section 25-21,261(1) applies to exempt a person from civil penalties where timely disclosure has been made and appropriate corrective action taken. The disclosure must be made within sixty days of the date the violation comes to light through a voluntary self-audit. See Neb. Rev. Stat. §§ 25-21,260 and 25-21,261(1) (Cum. Supp. 2000). Section25-21,261(1) specifically addresses what corrective action will be deemed appropriate in the event the violation is a failure to obtain a permit. In such a case, "appropriate efforts to correct the noncompliance may be demonstrated by the submission of a complete permit application within a reasonable time and a permit for such activities is subsequently issued by the agency."
Neb. Rev. Stat. § 25-21,259 (Cum. Supp. 2000), dealing with instances where an environmental audit is admissible in evidence, includes a similar provision. According to paragraph (1)(a)(ii) of that section, an environmental audit will be admissible if the person failed to take appropriate steps to remedy the problem. In the case of operating without a necessary permit, what is required is the completion of the permit application within a reasonable time.
In our view, Neb. Rev. Stat. §§ 25-21,261(1) and 25-21,259 do not address the availability of injunctive relief during the interim between the discovery of the violation and the obtaining of a permit. Section25-21,261(1) addresses civil penalties only, and § 25-21,259 has to do with the admissibility of the audit. Neither section would prevent the regulatory agency from obtaining any injunctive relief authorized by law; provided the agency is able to make a case for such relief.
 Sincerely, DON STENBERG Attorney General
 Lynn A. Melson Assistant Attorney General