REQUESTED BY: John A. Gale
Secretary of State
You have requested a formal opinion from the Attorney General's Office regarding financing statements filed to perfect several specific statutory liens and whether they should be treated as financing statements for agricultural liens under article 9 of the Uniform Commercial Code. You have three questions regarding these financing statements:
 (1) Does the Secretary of State have authority to treat financing statements filed to perfect statutory liens the same as financing statements filed to perfect agriculture (sic) liens, which is provided for in article 9 of the Uniform Commercial Code, such that the financing statements for statutory liens would lapse after five years pursuant to Uniform Commercial Code § 9-515(a)?
 (2) If the answer to Question 1 is that the Secretary of State has such authority, what is the status of those statutory liens filed prior to the implementation of LB 54 on July 1, 2001?
 (3) If the answer to Question 1 is that the Secretary of State has such authority, do other provisions of the UCC, for example, continuation statements (§ 9-515(c) through (f)) and termination statements (§§ 9 513(a) and 509(d)(2)) apply to statutory agriculture (sic) liens?
For the reasons set forth herein, we believe that financing statements filed pursuant to specific statutes, on or after July 1, 2001, are to be treated as agricultural liens, and that article 9 of the Uniform Commercial Code applies to these agricultural liens in the same manner as it would apply to any other agricultural lien created under the Uniform Commercial Code.
Authority to Treat Financing Statements Filed to Perfect Statutory Liens as Financing Statements to Perfect Agricultural Liens
Your first question is whether your office has the authority to treat financing statements filed to perfect statutory liens as it would financing statements filed to perfect agricultural liens, as provided in article 9 of the Uniform Commercial Code, such that the financing statements for the statutory agricultural liens would lapse after five years pursuant to Uniform Commercial Code § 9-515(a) (2001)? The answer to this question is that in circumstances specifically provided by statute the Secretary of State has this authority.
The Secretary of State has been designated as a location in which financing statements pursuant to the Uniform Commercial Code are to be filed in order to perfect the security interests at issue herein. See Neb. Rev. Stat. UCC §§ 9-501 (2001), 9-530 (2001); See also Committee Records on LB 54, 97th Neb.Leg., 1st Sess. 22, 24 (January 16, 2001). In order to perfect an agricultural lien, a financing statement must be filed. See, e.g. Neb. Rev. Stat. § 52-202 (2004).
The Uniform Commercial Code ("UCC") defines "agricultural lien" as
[A]n interest, other than a security interest, in farm products:
 (A) which secures payment or performance of an obligation for:
 (i) goods or services furnished in connection with a debtor's farming operation; or
 (ii) rent on real property leased by a debtor in connection with its farming operation;
 (B) which is created by statute in favor of a person that:
 (i) in the ordinary course of its business furnished goods or services to a debtor in connection with a debtor's farming operation; or
 (ii) leased real property to a debtor in connection with the debtor's farming operation; and
 (C) whose effectiveness does not depend on the person's possession of the personal property.
 The term also includes every lien created under sections 52-202, 52-501, 52-701, 52-901, 52-1101, 52-1201, 54-201, and 54-208, Reissue Revised Statutes of Nebraska, and Chapter 52, article 14, Reissue Revised Statutes of Nebraska.
Neb. Rev. Stat. UCC § 9-102(5) (2006).
Your opinion request references "filing procedures for financing statements pursuant to statutory liens" as found in Nebraska Statutes, chapter 52, articles 2, 5, 7, 9, 11, 12, and 14 and chapter 54, article 2. Creation of a lien under any of these statutes specifically creates an "agricultural lien" under Neb. Rev. Stat. UCC § 9-102(5). In addition, the statutory language found in each of these articles specifies that the liens filed pursuant to Neb. Rev. Stat. §§ 52-202,52-501 (2004), 52-701 (2004), 52-901 (2004), 52-1101 (2004), 52-1201
(2004), 54-201 (2004), 54-208 (2004), and Chapter 52, article 14 (2004) "shall be treated in all respects as an agricultural lien as provided in article 9, Uniform Commercial Code." Neb. Rev. Stat. § 52-203 (2004). See also Neb. Rev. Stat. §§ 52-501(4), 52-702 (2004), 52-903 (2004),52-1103 (2004), 52-1203 (2004), 52-1407 (2004), 54-201, 54-208. This language was added by 2001 Neb. Laws LB 54 ("LB 54,") which took effect on July 1, 2001, to correspond with changes in the UCC which were effective on the same date. See generally Committee Records on LB 54, 97th Neb.Leg., 1st Sess.
In conducting our analysis of your questions, we should first mention certain basic principles of statutory construction. The language in statutes should be given its plain and ordinary meaning. In re: Interest of Jeremy T., State of Nebraska, Douglas County v. Nebraska Department of Health and Human Services, 257 Neb. 736, 600 N.W.2d 747 (1999). In the event that a statute is ambiguous, the legislative history of the act is examined for the main intent of the Legislature in enacting the statute. State ex rel. Bouc v. School Dist. of City of Lincoln,211 Neb. 731, 320 N.W.2d 472 (1982).
We do not believe the statutes at issue here, or the language in Neb. Rev. Stat. UCC § 9-102(5), create any ambiguity. The plain language of these statutes sets forth that the statutory liens filed pursuant to Neb. Rev. Stat. §§ 52-202, 52 501, 52-701, 52-901, 52-1101, 52-1201, 54-201, 54-208, and Chapter 52, article 14 are to be treated as agricultural liens in all respects. Thus, your office has the express authority to treat the financing statements filed on or after July 1, 2001, to perfect statutory liens under these statutes as it would the financing statements filed to perfect agricultural liens. This includes the provisions found for agricultural liens in UCC § 9-515(a) (2001) that the financing statements for these liens filed on or after July 1, 2001, are only effective for a period of five years from the date of filing.
Our analysis does not apply to any other statutory lien filed with your office that is not specifically designated as an agricultural lien under its statute or UCC § 9-102(5); it is limited to only those designated sections in LB 54, Neb. Rev. Stat. §§ 52-202, 52-501, 52-701,52-901, 52-1101, 52-1201, 54-201, 54-208, and Chapter 52, article 14. See Committee Records on LB 54, 97th Neb.Leg., 1st Sess., Introducer's Statement of Intent.
2001 Neb. Laws LB 54 Is Not To Be Applied Retroactively
Your next question is that if the liens filed pursuant to Neb. Rev. Stat. §§ 52-202, 52-501, 52-701, 52-901, 52-1101, 52-1201, 54-201,54-208, and Chapter 52, article 14 are to be treated as agricultural liens, what is the status of the statutory liens filed prior to the implementation of LB 54 on July 1, 2001? This question is one of retroactivity, and whether LB 54 is to be applied retroactively. The answer to this question is LB 54 is not retroactive, and the status of the statutory liens filed prior to July 1, 2001, is governed by the law in effect at the time of their filing.
In Nebraska, in noncriminal cases, statutes are generally not given retroactive effect unless the Legislature has clearly expressed an intention that the new statute is to be applied retroactively. Larson v. Jensen, 228 Neb. 799, 424 N.W.2d 352 (1988). See, also, Proctor v. Minnesota Mut. Fire Cas., 248 Neb. 289, 534 N.W.2d 326 (1995). . . . In determining whether statutory amendments should be applied retroactively, we may look to the legislative history of the statute in general and in particular to the legislative intent, if any, regarding retroactivity. Nickel v. Saline Cty. Sch. Dist. No. 163, 251 Neb. 762,559 N.W.2d 480 (1997).
Battle Creek State Bank v. Haake, 255 Neb. 666, 681, 587 N.W.2d 83, 92
— 93 (1998).
The plain language of the statues at issue herein makes no mention of any retroactive application. Neb. Rev. Stat. §§ 52-204 (2004), 52-504
(2004), 52 702, 52-905 (2004), 52-1104 (2004), 52-1205 (2004), 52-1409 (2004) and 54 209 (2004) provide for the filing of termination statements for their respective liens once the lien has been satisfied. However, each of these statutes contains the following language: "[t]his section does not apply to a lien created under section 52-202 [or the corresponding section creating the lien] that is filed as an agricultural lien under article 9, Uniform Commercial Code, on or after July 1, 2001." Neb. Rev. Stat. § 52-204. Therefore, for those liens filed before July 1, 2001, the statutory language regarding termination of the liens applies; for those liens filed on or after July 1, 2001, the UCC language as to this subject governs.
We next to look to the legislative history of LB 54 to determine whether the intent was to create retroactive applicability of this bill. The legislative history for LB 54 makes no indication that the Legislature intended for the bill to be applied retroactively to any liens filed before July 1, 2001. LB 54 was passed in order to eliminate duplicate filings that would have been required upon the enactment of the revised UCC, article 9, which was to go into effect on July 1, 2001. Committee Records on LB 54, 97th Neb.Leg., 1st Sess., Introducer's Statement of Intent, Bill Summary, Committee Statement. It appears from the legislative history that those duplicate filings were not required before July 1, 2001. See generally, Id. Without a clear expression that LB 54 is to be retroactively applied, we cannot conclude that LB 54 applies to liens filed before July 1, 2001. Thus, any liens filed before July 1, 2001, are governed by the law in effect at the time of the filing.
Other Relevant Provisions of the UCC Apply to Agricultural Liens
Your final questions is whether other provisions of the UCC, for example, continuation statements (UCC § 9-515(c) through (f)) and termination statements (UCC §§ 9-513(a) and 509(d)(2)) apply to statutory agricultural liens? The answer to this question is that, for those liens filed on or after July 1, 2001, pursuant to Neb. Rev. Stat. §§ 52-202,52-501, 52-701, 52-901, 52-1101, 52-1201, 54-201, 54-208, and Chapter 52, article 14, the other provisions of the UCC that apply to agricultural liens also apply to these liens, as these liens are to be treated "in all respects as an agricultural lien as provided in article 9, Uniform Commercial Code." This includes the provisions of UCC §§ 9-509, 9-513, and 9 515. See Neb. Rev. Stat. §§ 52-203, 52-501(4),52-702, 52-903, 52-1103, 52 1203, 52-1407, 54-201, 54-208.
Conclusion
Based on the above, it is our opinion that financing statements filed on or after July 1, 2001, to perfect statutory liens pursuant to Neb. Rev. Stat. §§ 52-202, 52-501, 52-701, 52-901, 52-1101, 52-1201, 54-201,54-208, and Chapter 52, article 14 are to be treated as agricultural liens as provided for in article 9 of the UCC, and that the provisions of article 9 of the UCC apply to these liens just as any other agricultural lien created under the UCC. The status of statutory liens filed pursuant to Neb. Rev. Stat. §§ 52-202, 52-501, 52-701, 52-901,52-1101, 52 1201, 54-201, 54-208, and Chapter 52, article 14 prior to July 1, 2001 are governed by the statutes in effect at the time of the filing of the financing statements related to those liens.
Sincerely,
 JON BRUNING Attorney General
 Natalee J. Hart Assistant Attorney General
Approved:
 ______________________________ Attorney General